443 So.2d 427 (1984)
Richard B. BOYNTON, et al., Appellants,
v.
ALLSTATE INSURANCE CO., et al., Appellees.
No. 82-1002.
District Court of Appeal of Florida, Fifth District.
January 5, 1984.
*428 R. David Ayers, Jr., Winter Park, for appellants.
Robert A. Wohn, Jr., of Anderson & Hurt, P.A., Orlando, for appellee Allstate.
No appearance for appellee Luke.
ORFINGER, Chief Judge.
Two issues are raised on appeal: (1) Is a vehicle an uninsured vehicle when a policy of liability insurance covers it, but the policy does not provide coverage for the particular occurrence; (2) Is the insured "legally entitled to recover" from the operator of an uninsured motor vehicle when there is a statutory bar to an action against the operator, but for which bar, recovery would lie? In this action to recover uninsured motorist benefits, the trial court entered a summary judgment in favor of the insurer and the insured appeals. We reverse.
Richard O. Boynton, appellant, was employed by Sears, Roebuck & Company as an auto mechanic. James Luke was also employed by Sears as a mechanic and worked in the same garage as did Boynton. While both were on the job, Boynton was injured when he was struck by a car on which Luke was working. Boynton sought damages under Luke's automobile liability policy, but the carrier denied coverage because Luke was on the job when the accident occurred and Luke's policy excluded coverage for injury occasioned during the pursuit of a business.
The auto which ran into Boynton was owned by Gelco Corporation and leased to Xerox Corporation. Xerox had left it with Sears for repairs and maintenance. The Boyntons filed suit against Sears and Xerox and their respective insurance carriers. Sears was later voluntarily dismissed, and a final summary judgment was entered in favor of Xerox under the principles announced in Castillo v. Bickley, 363 So.2d 792 (Fla. 1978). This order was not appealed, but it is significant here in that it demonstrates that the owner's liability insurance is not available to Boynton. The Boyntons then amended their complaint, alleging that Luke was an uninsured motorist when he negligently ran the car into Boynton so that Boynton was entitled to recover his damages from Allstate under his (Boynton's) uninsured motorist coverage. The court entered final summary judgment in favor of Allstate, and this order is the subject of this appeal.
In Boynton's automobile insurance policy, Allstate has agreed that:
We will pay damages for bodily injury, sickness, disease or death which you are legally entitled to recover from the owner or operator of an uninsured auto. Injury must be caused by accident and arise out of the ownership, maintenance or use of an uninsured or underinsured auto.
There is no contention that Boynton's injury was not caused by accident, nor from the maintenance or use of an automobile. Allstate contends, however, that the automobile in question was not "uninsured" and that Boynton was not "legally entitled to recover" damages from Luke. Thus, argues Allstate, Boynton is not entitled to recover uninsured motorist benefits.

*429 I. IS THE AUTO IN QUESTION "UNINSURED"?
Boynton's policy provides us with this definition:
An uninsured auto is:
(1) A motor vehicle which has no bodily injury liability bond or insurance policy in effect at the time of the accident.
(2) A motor vehicle for which the insurer denies coverage, or the insurer becomes insolvent within twelve months from the date of the accident.
(3) A hit-and-run motor vehicle which causes bodily injury to an insured person... .
Wausau, Xerox's carrier, has denied coverage for this accident because Xerox is not responsible for it. The question thus presented is whether a vehicle is "uninsured" although covered by a liability policy, when the policy provides no coverage for the particular loss for which damages are claimed.
In Brown v. Progressive Mutual Insurance Company, 249 So.2d 429 (Fla. 1971), the supreme court held:
The purpose of the uninsured motorist statute is to protect persons who are injured or damaged by other motorists who in turn are not insured and cannot make whole the injured party. The statute is designed for the protection of injured persons, not for the benefit of insurance companies or motorists who cause damage to others.

* * * * * *
In deciding whether a person is entitled to the protection of Fla. Stat. § 627.0851, F.S.A., the question to be answered is whether the offending motorist has insurance available for the protection of the injured party, for whose benefit the statute was written; the test should not be simply whether or not the injured party can prove the offending party was uninsured, which is, in many instances, impossible in hit-and-run cases. Any other construction of the statute is unfair and unduly restricts the application intended by the Legislature. (emphasis added).
249 So.2d at 430.
In American Fire and Casualty Company v. Boyd, 357 So.2d 768 (Fla. 1st DCA 1978), the court found the vehicle which caused plaintiff's injury to be "uninsured," though covered by a liability policy, because of a provision which excluded coverage when the insured was travelling under military orders. The court said:
The sole issue is whether the Hansen vehicle was "an uninsured vehicle" within the meaning of that term as used in F.S. 626.727. We hold that it was, and therefore affirm. Although Hansen had procured a policy of insurance, that policy afforded no coverage because of the exclusionary clause; and the mere fact that Hansen was in such a position as to cause to be invoked by his negligence the provisions of the Federal Tort Claims Act does not mean that he is thereby "insured" within the meaning of the statute.
357 So.2d at 768.
Allstate relies on Centennial Insurance Company v. Wallace, 330 So.2d 815 (Fla. 3d DCA), cert. denied, 341 So.2d 1087 (Fla. 1976), as support for the judgment here. Wallace held that a self-insured vehicle was not an uninsured vehicle, and that it could not be considered "uninsured" "simply because coverage may not be available to the injured party under the circumstances." Id. at 817. We cannot agree, and we hold, as in Boyd, that a motor vehicle is uninsured, as that term pertains to a specific loss, if the offending motorist has no insurance coverage available for the protection of the injured party. Brown. In our view, a policy which, because of exclusions, provides no coverage for a particular loss, is tantamount to no insurance at all as respects that loss. Additionally, the existence of the "owner's" insurance here is really irrelevant, because Xerox cannot be held liable as owner, absent its own negligence, for the operation of the vehicle when that vehicle has been turned over to a repair shop or garage. Castillo. We find nothing in the applicable *430 statute or cases which prohibits a claim under an uninsured motorist provision simply because the other vehicle involved is covered by an unresponsive or unenforceable insurance policy.

II. IS BOYNTON "LEGALLY ENTITLED TO RECOVER" DAMAGES FROM LUKE, AS THE OPERATOR OF THE VEHICLE WHICH CAUSED THE INJURY?
Luke and Boynton were fellow employees at Sears, so section 440.11, Florida Statutes (Supp. 1978), applies here and precludes suit by Boynton against Luke.[1] Boynton has shown no facts which would bring this case within the exceptions recognized by the statute. Allstate contends that because Boynton cannot recover in an action against Luke, Boynton is thus not "legally entitled to recover" damages. Boynton contends that Luke's immunity from suit only strengthens his entitlement to uninsured motorist benefits.
The majority of courts which have construed the words "legally entitled to recover as damages" have construed them to mean simply that the insured must be able to establish fault on the part of the uninsured motorist which gives rise to the damages and to prove the extent of the damages. See, e.g., Winner v. Ratzlaff, 211 Kan. 59, 505 P.2d 606 (1973), and cases cited in Anno., 73 A.L.R.3d 632, 649. Recovery may be had under this coverage when the claimant shows conduct on the part of the tortfeasor which would entitle claimant to recover damages even though a defense available to the tortfeasor would defeat actual recovery. Allstate Insurance Co. v. Elkins, 77 Ill.2d 384, 33 Ill.Dec. 139, 396 N.E.2d 528 (1979).
In other cases, it has been held that the expiration of the statute of limitations which would bar an action against the tortfeasor does not bar recovery of uninsured motorist benefits, Sahloff v. Western Casualty & Surety Company, 45 Wis.2d 60, 171 N.W.2d 914 (1969); DeLuca v. Motor Vehicle Accident Indemnity Corporation, 17 N.Y.2d 76, 268 N.Y.S.2d 289, 215 N.E.2d 482 (1966); Transnational Insurance Company v. Simmons, 19 Ariz. App. 354, 507 P.2d 693 (1973); that the inability of the injured party to recover against the tortfeasor because of interspousal immunity does not prevent recovery of uninsured motorist benefits, Elkins; that a discharge in bankruptcy of the tortfeasor which bars suit against him does not preclude recovery of uninsured motorist benefits, Wilkinson v. Vigilant Insurance Company, 236 Ga. 456, 224 S.E.2d 167, on remand, Wilkinson v. Craft, 138 Ga. App. 380, 226 S.E.2d 478 (1976); and that the insured's dismissal of an uninsured tortfeasor who is joined in a suit seeking uninsured motorist benefits does not bar the insured's recovery from the insurer of uninsured motorist benefits, Reese v. Preferred Risk Mutual Insurance Company, 457 S.W.2d 205 (Mo. App. 1970).
In Watkins v. United States, 462 F. Supp. 980 (S.D.Ga. 1977); aff'd 587 F.2d 279 (5th Cir.1979), the widow of a serviceman who was killed on the base by a shuttle bus driven by a civilian employee sued the United States, the driver, and Government *431 Employees Insurance Company (GEICO), decedent's uninsured motorist carrier. A summary judgment was entered in favor of the driver because he was immune from suit under the Federal Drivers Act, 28 U.S.C. § 2679(b). A summary judgment was also entered in favor of the United States because it too was immune from suit because decedent's injuries arose out of or were incurred in the course of an activity incident to service. See Feres v. United States, 340 U.S. 135, 71 S.Ct. 153, 95 L.Ed. 152 (1950).
On the uninsured motorist claim, GEICO contended that no benefits were payable because plaintiff could not recover judgment against the driver in view of the immunity afforded by the Federal Drivers Act. Thus, argued GEICO, plaintiff was not "legally entitled to recover" damages. The court rejected this argument and held that if an insured can establish tort liability, he can recover from his uninsured motorist carrier "regardless of whether he can recover against the uninsured motorist." Id. at 990.
A claim for uninsured motorist benefits is a claim under the insurance contract. Hartford Accident and Indemnity Company v. Mason, 210 So.2d 474 (Fla. 3d DCA 1968). Without the policy provision, there would be no claim against the carrier. Allstate contends, however, that if the vehicle involved is uninsured, then the injured party's carrier stands in the shoes of the tortfeasor, and should have all its rights. This argument is often made, but has been aptly restricted in this context as explained in Sahloff v. Western Casualty & Surety Company, where the Wisconsin Supreme Court said:
Although the phrase "legally entitled to recover" appears both in sec. 204.30(5)(a), Stats., and in the uniform uninsured motorist coverage, we find no basis in the history of the statute or of the endorsement that coverage should be restricted to those situations in which the insurer can stand in the shoes of the uninsured motorist. The purpose and intent of this type of coverage was to benefit the insured so that he would be reimbursed for his injuries. The purpose was not to provide free liability insurance for an otherwise uninsured motorist; and the endorsement does not do so because a right of subrogation does exist, if the insurer wishes to preserve it. In settling a claim under the endorsement, the insurer does not represent the uninsured motorist but rather itself on its own contract against its own insured who has paid a premium for this indemnity feature in his liability policy. It is neither necessary under the coverage nor desirable public policy to place the indemnity insurer in exactly the same position of a liability insurer of an uninsured motorist. Consequently, the claim against the insurer on the endorsement should be and is treated differently than the cause of action the insured has against the uninsured motorist.
171 N.W.2d at 918.
We agree. The insured has paid a premium for insurance coverage which protects him when he is injured through the negligence of an uninsured motorist. He need not secure a recovery against such motorist as a condition to his securing uninsured motorist benefits (and in fact may not do so under the policy without the carrier's consent.) He is "legally entitled to recover" in the context of the insurance policy if he can show liability on the part of the uninsured motorist and damages resulting therefrom.
The judgment appealed from is reversed and the cause is remanded for further proceedings consistent herewith.
REVERSED and REMANDED.
DAUKSCH, J., concurs.
FRANK D. UPCHURCH, Jr., J., dissents with opinion.
FRANK D. UPCHURCH, Jr., Judge, dissenting.
I respectfully dissent. The majority opinion directly conflicts with Centennial Insurance Co. v. Wallace, 330 So.2d 815 *432 (Fla. 3d DCA), cert. denied 341 So.2d 1087 (Fla. 1976). In Centennial, the plaintiff was prevented from recovering from the owner of a vehicle by virtue of the immunity provision of the workmen's compensation laws. In holding that plaintiff's uninsured motorist coverage did not apply, the court stated:
Where a vehicle is covered to the extent of the law, it is not an uninsured vehicle simply because coverage may not be available to the injured party under the circumstances. See Taylor v. Safeco Insurance Co., Fla.App. 1974, 298 So.2d 202.
330 So.2d at 817.
The majority equates "legally entitled to recover" with the establishment of fault on the part of the uninsured motorist. I cannot conclude this is correct for two reasons. First, "legally entitled" means something more than simply "entitled." In the instant case, Boynton was perhaps "entitled" to recover but he was not "lawfully or legally" entitled to recover because he was barred by law from recovery. See § 440.11, Fla. Stat. (Supp. 1978). Had he been legally entitled to recover, Boynton could recover from Luke who had a liability policy in effect. Second, the wording of the uninsured motorist statute includes "lawfully entitled to recover from the operator of an uninsured motor vehicle." The vehicle was not uninsured by the definition in the policy or as provided by law. In fact, the vehicle had in effect all the liability insurance required by law.
In Hayston v. Allstate Insurance Company, 290 So.2d 67 (Fla. 3d DCA 1974), Hayston was injured in an accident with another vehicle operated by David McConnell and owned by John Jordan. McConnell had no automobile liability policy. However, Jordan had a policy in effect which provided coverage to McConnell as a permissive user of the automobile. On appeal from a final summary judgment in favor of Allstate, Hayston argued that the uninsured motorist provision was applicable where the operator of the vehicle, McConnell, did not own a policy, even though the owner, Jordan, did have a policy covering the driver of the car with the permission and consent of the owner. The court rejected this argument, stating:
The policy now clearly envisions that where a bodily injury liability policy is applicable at the time of the accident, then the uninsured motorist portion of the policy is inapplicable.
Id. at 68. See also General Accident Fire & Life Assur. Corp. v. Means, 362 So.2d 135 (Fla. 2d DCA 1978); Castaneda v. State Farm, 348 So.2d 1231 (Fla. 3d DCA 1977).
In Reid v. Allstate Ins. Co., 344 So.2d 877, 879 (Fla. 4th DCA 1977), approved, Reid v. State Farm Fire & Casualty Co., 352 So.2d 1172 (Fla. 1978), where a daughter was prevented from recovering from her father, the court stated:
We hold that the family car in this case is not an uninsured motor vehicle and it does not become uninsured because liability coverage may not be available to a particular individual.
While philosophically I may agree that the cases cited reflect an omission in uninsured motorist protection, I cannot agree that we have any authority to rewrite the clear and unambiguous policy terms which define an uninsured motor vehicle as "a motor vehicle which has no bodily injury liability bond or insurance policy in effect at the time of the accident", in the absence of statutory mandate or unless the definition contravenes public policy.
In Salas v. Liberty Mutual Fire Insurance Co., 272 So.2d 1, 3 (Fla. 1972), the Florida Supreme Court said:
Fla. Stat. § 627.0851, F.S.A. establishes the public policy of Florida to be that every insured, as defined in the policy, is entitled to recover under the policy for damages he would have been able to recover against the negligent motorist if that motorist had maintained a policy of liability insurance. (emphasis added)
Therefore, it follows that the insurance carrier stands in the shoes of the tortfeasor and if there can be no recovery against the *433 tortfeasor, then there can be no recovery against the uninsured motorist insurance carrier.
The majority opinion has created a large class of uninsured vehicles. Every automobile left with a garage for repairs is uninsured as to employees injured by its negligent operation. While this risk may not be as great as I envision it, it is certainly not a risk contemplated by the carrier in establishing its rates. I would affirm.
NOTES
[1] Section 440.11, Fla. Stat. (Supp. 1978):

Exclusiveness of liability 
(1) The liability of an employer prescribed in s. 440.10 shall be exclusive and in place of all other liability of such employer to any third-party tortfeasor and to the employee, the legal representative thereof, husband or wife, parents, dependents, next of kin, and anyone otherwise entitled to recover damages from such employer at law or in admiralty on account of such injury or death. .. . The same immunities from liability enjoyed by an employer shall extend as well to each employee of the employer when such employee is acting in furtherance of the employer's business and the injured employee is entitled to receive benefits under this chapter. Such fellow-employee immunities shall not be applicable to an employee who acts, with respect to a fellow employee, with willful and wanton disregard or unprovoked physical aggression or with gross negligence when such acts result in injury or death or such acts proximately cause such injury or death, nor shall such immunities be applicable to employees of the same employer when each is operating in the furtherance of the employer's business but they are assigned primarily to unrelated works within private or public employment.