486 So.2d 552 (1986)
ALLSTATE INSURANCE COMPANY, Petitioner,
v.
Richard B. Boynton, and Linda O. Boynton, His Wife, Respondents.
No. 64838.
Supreme Court of Florida.
March 13, 1986.
Rehearing Denied May 7, 1986.
*553 Harry Anderson and Robert A. Wohn, Jr., of Anderson and Hurt, Orlando, for petitioner.
R. David Ayers, Jr., Winter Park, for respondents.
Nancy Little Hoffmann, of Nancy Little Hoffmann, P.A., Fort Lauderdale, amicus curiae for Academy of Florida Trial Lawyers.
EHRLICH, Justice.
In this uninsured motorist case, Allstate Insurance Company seeks review of the decision of the District Court of Appeal, Fifth District, in Boynton v. Allstate Insurance Co., 443 So.2d 427 (Fla. 5th DCA 1984). Acknowledging conflict with Centennial Insurance Co. v. Wallace, 330 So.2d 815 (Fla. 3d DCA), cert. denied, 341 So.2d 1087 (Fla. 1976), the district court reversed a summary judgment that had been entered in favor of the uninsured motorist insurance carrier. We have jurisdiction pursuant to article V, section 3(b)(3), Florida Constitution.
We quash the district court's decision. We agree with the district court that a vehicle may be an "uninsured motor vehicle" under section 627.727(1), Florida Statutes (Supp. 1978),[1] even when it is covered by a liability insurance policy, if that policy does not provide coverage for the particular occurrence that caused plaintiff's damages. However, we also hold that the phrase "legally entitled to recover" in the context of section 627.727(1) does not encompass claims where the uninsured tortfeasor is immune from liability because *554 of the Workers' Compensation Law, chapter 440; Florida Statutes.
In this case, the plaintiff, Richard Boynton, was employed by Sears, Roebuck & Company as an auto mechanic. While on the job, Boynton was struck and injured by a car on which his co-employee, James Luke, was working. The car was leased to Xerox Corporation and was left at the Sears Auto Center for repairs. Boynton first brought suit against Sears, Xerox, and their insurance carriers. He voluntarily dismissed his suit against Sears and its insurer because Sears was immune from tort suit under section 440.11, Florida Statutes.[2] The trial court granted summary judgment in favor of Xerox and its insurer based on Castillo v. Bickley, 363 So.2d 792 (Fla. 1978). That case held that an automobile owner, absent his own negligence, is not liable for the negligent operation of a vehicle left at a repair shop. Boynton then sought to recover damages from Luke's automobile liability insurance carrier, but that carrier denied coverage because of a provision in Luke's policy excluding injuries occurring during the pursuit of a business.
Boynton then amended his complaint to allege that Luke was an uninsured motorist and sought to recover under his own uninsured motorist policy with Allstate.[3] The trial court entered summary judgment in favor of Allstate. On appeal from this judgment, Boynton raised two issues:
(1) Is a vehicle an uninsured vehicle when a policy of liability insurance covers it, but the policy does not provide coverage for the particular occurrence?
(2) Is the insured "legally entitled to recover" from the operator of an uninsured motor vehicle when there is a statutory bar to an action against the operator, but for which bar, recovery would lie?
The Fifth District reversed. It held that in the context of the Florida uninsured motorist statute, a vehicle is an "uninsured vehicle" when a policy of liability insurance covers it, but the policy does not provide coverage for the particular occurrence[4] *555 and that an insured is "legally entitled to recover" from the operator of an uninsured motor vehicle when there is a statutory bar to an action against the operator, but for which bar, recovery would lie.

First Issue
Allstate asserts that the vehicle in question was not "uninsured" because Xerox had a liability insurance policy that would have provided coverage if Boynton had had a cause of action against Xerox. We reject this argument. The fact that an owner or operator of a motor vehicle has a liability insurance policy does not always mean that the vehicle is insured in the context of section 627.727(1). A vehicle is insured in this context only when the insurance in question is available to the injured plaintiff. It is undisputed that Xerox was without fault as a matter of law and that it could not be held responsible for Luke's negligence. That being the case, Xerox's liability insurance was not available to Boynton. In the context of Boynton's uninsured motorist claim, it cannot be said that this was an insured motor vehicle just because Xerox had liability insurance coverage.
Allstate next asserts that the vehicle in question was not "uninsured" because Luke also had a liability insurance policy. We likewise reject this contention. Luke's policy specifically excluded injuries occurring in the pursuit of a business. This exclusion is applicable to the facts of this case. Luke's policy, therefore, did not provide coverage for this particular occurrence.
An analogous situation is found in American Fire & Casualty Co. v. Boyd, 357 So.2d 768 (Fla. 1st DCA 1978). In that case, Boyd was injured in an automobile accident caused by the negligence of Hansen. Hansen had a liability policy which excluded coverage while traveling on military orders, which is what he was doing at the time of the accident. The district court correctly found that Hansen's automobile was "uninsured" in the context of Boyd's uninsured motorist policy and permitted him to recover uninsured motorist benefits. The district court reasoned:
Although Hansen had procured a policy of insurance, that policy afforded no coverage because of the exclusionary clause; and the mere fact that Hansen was in such a position as to cause to be invoked by his negligence the provisions of the Federal Tort Claims Act does not mean that he is thereby "insured" within the meaning of the statute.
Id. at 769. The availability of a collateral remedy, the Federal Tort Claims Act in Hansen, workers' compensation in this case, likewise does not render a vehicle "insured."
In the present case, we hold that in the context of Boynton's uninsured motorist policy, the motor vehicle which injured him was "uninsured." Xerox's policy afforded no coverage because Xerox was without fault as a matter of law. Luke's liability policy afforded no coverage because of the policy exclusion.[5]

Second Issue
Although the vehicle was technically uninsured as to respondents, section 627.727(1) and the policy endorsement still require the policyholder be "legally entitled to recover" from the owner or operator of the uninsured vehicle. The plain meaning of the requirement would appear to be that the insured must have a claim against the tortfeasor which could be reduced to judgment in a court of law. The district court, *556 however, construes the phrase in more limited fashion:
The majority of courts which have construed the words "legally entitled to recover" have construed them to mean simply that the insured must be able to establish fault on the part of the uninsured motorist which gives rise to the damages and to prove the extent of the damages. See, e.g., Winner v. Ratzlaff, 211 Kan. 59, 505 P.2d 606 (1973), and cases cited in Anno., 73 A.L.R.3d 632, 649. Recovery may be had under this coverage when the claimant shows conduct on the part of the tortfeasor which would entitle claimant to recover damages, even though a defense available to the tortfeasor would defeat actual recovery.
Boynton v. Allstate, 443 So.2d 427, 430 (Fla. 5th DCA 1984). However, none of the cases cited in support of this interpretation were decided in the context of a statutory bar by a workers' compensation law.
For instance, in Winner v. Ratzlaff the issue was not even whether some statutory bar to recovery against the tortfeasor prevented recovery from the insurer, but rather whether the insured could sustain a direct action against his insurer. The insured had originally sued only the tortfeasor, but, after discovery revealed the defendant was uninsured, the insured added his UM carrier as a defendant. He then sought to dismiss the tortfeasor from the suit. The Kansas Supreme Court held it was error for the trial judge to have refused to dismiss the tortfeasor. The court reasoned that the Kansas uninsured motorist law had been enacted, in part, to avoid any requirement that a judgment be had against the tortfeasor before liability would arise against the UM carrier. In reaching this conclusion, the court discussed the phrase at issue here.
We construe the words "legally entitled to recover as damages" to mean simply that the insured must be able to establish fault on the part of the uninsured motorist which gives rise to the damages and to prove the extent of those damages. This would mean in a direct action against the insurer the insured has the burden of proving that the other motorist was uninsured, that the other motorist is legally liable for damage to the insured, and the amount of this liability. In resisting the claim the insurer would have available to it, in addition to policy defenses compatible with the statute, the substantive defenses that would have been available to the uninsured motorist such as contributory negligence, etc.

211 Kan. at 64, 505 P.2d at 610 (citation omitted, emphasis added). The district court was correct in noting that the insured need only show fault and damages, but neglected to note the qualification that the insurer has available all substantive defenses the tortfeasor could have raised.
The Winner court looked to the cogent observations of a commentator on UM law in reaching its conclusion. His explanation of the origins of UM coverage sheds light on the problem before us.
The antecedent of the uninsured motorist endorsement ... can be found in the unsatisfied judgment insurance first offered in about 1925 by the Utilities Indemnity Exchange. This insurance provided indemnification when the insured showed both (1) that he had reduced a claim to judgment and (2) that he was unable to collect the judgment from the negligent party. Such insurance was available from several companies during the years from 1925 until 1956. When the uninsured motorist coverage became generally available, the unsatisfied judgment insurance was abandoned. It should be noted that the uninsured motorist endorsement  as proposed and subsequently issued  differed significantly from its predecessor in that it eliminated the requirement that the insured obtain a judgment against the uninsured obtain a judgment against the uninsured motorist prior to recovering under his policy.

*557 A. Widiss, A Guide to Uninsured Motorist Coverage § 1.9 (1969) (emphasis added) (hereinafter cited as Widiss).
Uninsured motorist coverage therefore arose in the context of providing a less cumbersome method for an insured to receive payment from the party with the ultimate financial responsibility, the insurer. UM coverage, with its normal procedure of settling disputes through arbitration, would save both the insured and insurer the time and expense of a trial against the uninsured motorist, and would also help the insurer avoid the complications inherent in a trial where the interests of the tortfeasor and the insurer may not necessarily coincide.
None of this suggests that UM coverage was developed to expand the coverage previously provided by unsatisfied judgment insurance. Indeed, Widiss notes that "[t]he insurance industry conceived and developed the uninsured motorist endorsement in an attempt to forestall the enactment of state legislation directed at either creating compulsory insurance requirements or otherwise altering the character of the then-existing insurance market in order to deal with the hazard created by [financially irresponsible] uninsured motorists." Widiss at § 1.12. It seems unlikely that the companies would deliberately relinquish valid substantive defenses when it was wholly unnecessary to do so to achieve the goal of protecting against financially irresponsible motorists. Widiss also observes that in most states where UM coverage has been made mandatory subsequent to its development, the legislation has merely required a UM endorsement. While Florida's section 627.727 does go into some detail regarding UM coverage, the first sentence of the statute, containing the language at issue here, merely defines UM coverage in terms sufficient to identify it as such. This does not suggest any legislative intent to expand UM coverage beyond that contemplated by the insurance-industry-developed endorsement.
The legislature wisely enacted a scheme whereby a motorist may obtain a limited form of insurance coverage for the uninsured motorist, by requiring that every insurer doing business in this state offer and make available to its automobile liability policyholders UM coverage in an amount equal to the policyholder's automobile liability insurance. The policyholder pays an additional premium for such coverage. The uninsured motorist statute provides that coverage is "for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles because of bodily injury." § 627.727(1). The UM coverage, in purpose and effect, provides a limited form of insurance coverage up to the applicable policy limits for the uninsured motorist. The carrier effectually stands in the uninsured motorist's shoes and can raise and assert any defense that the uninsured motorist could urge. In other words, UM coverage is a limited form of third party coverage inuring to the limited benefit of the tortfeasor to provide a source of financial responsibility if the policyholder is entitled under the law to recover from the tortfeasor. It is not first party coverage even though the policyholder pays for it. In first party coverage, such as medical, collision or theft insurance, fault is not an element. The insurance carrier pays even though the policyholder is totally at fault. With UM coverage, the carrier pays only if the tortfeasor would have to pay, if the claim were made directly against the tortfeasor.
One involved in an accident with an uninsured motorist can bring a common law action against the uninsured motorist, if he so desires. The uninsured motorist can of course defend and interpose any defense available to him at law including contributory negligence and the exclusiveness of worker's compensation. If the injured party recovers a judgment, he may endeavor to satisfy his judgment from the tortfeasor's assets. However, the insured motorist may opt to make claim against his UM carrier instead of suing the tortfeasor. In so doing he has a policy prerequisite, namely, proof that the tortfeasor is uninsured. The tortfeasor may be financially *558 responsible, but if he is without insurance or has not complied with the self-insurance provisions of the statutes, the injured party may make claim against his UM carrier. The insurer is subrogated to any sum that it pays the policyholder under the UM coverage and may bring suit against the uninsured motorist to recover all sums it has paid its insured under the UM policy. The subrogation right would be frustrated if the insurer were forced to pay claims when it would be barred by a substantive defense from winning a judgment against a tortfeasor.
The district court and respondent dispute the argument that the case is controlled by the proposition that the insurer stands in the shoes of the tortfeasor. The court relied in part on Sahloff v. Western Casualty & Surety Co., 45 Wis.2d 60, 171 N.W.2d 914 (1969), which held that the expiration of the statute of limitations which would bar an action against the tortfeasor did not bar an action against the insurer when the suit was brought before expiration of the statute of limitations for contract actions. From the portion of Sahloff quoted by the district court, it is clear the Wisconsin court relied heavily on the notion that the relationship between insurer and insured arises in contract, not tort. See also Mendlein v. United States Fidelity & Guaranty Co., 277 So.2d 538 (Fla. 3d DCA 1973) (district court did not dispute assumption of all parties that contract statute of limitations controlled the UM claim at issue). Also, while substantive defenses are available to the insurer, Winner, a procedural defense such as a statute of limitations is not necessarily also available. However, the statute of limitations issue is not before us, and we reserve a decision on this for a later day. It is enough that we here find that the insurer has the tortfeasor's substantive defenses available, and we need not decide whether this is to the exclusion of some or all procedural defenses.
There is another reason for our decision here. Widiss writes, in the context of whether the insurer should be able to claim the protection of the tortfeasor's tort immunities:
The issue raised by such immunities is whether, for purposes of the uninsured motorist coverage, the claimant is "legally entitled to recover" as contemplated in the endorsement... .
Professor Prosser states that "such immunity does not mean that conduct which would amount to a tort on the part of other defendants is not equally tortious in character, but merely that for protection of the particular defendant or interests which he represents, he is given absolution from liability." [W. Prosser, Law of Torts 996 (3d ed. 1964).] Professor Prosser's language seems to suggest that the injured party is legally entitled to recover, but that the immunity involved absolves the defendant from liability... .
Attempting to resolve this issue as a problem in semantics  that is, over whether the claimant is "legally entitled"  is not especially productive. .. . To the extent that there is a strong interest in protecting the insurance company's right of subrogation following the payment of a claim, there is a persuasive reason why the existence of an immunity from liability should mean that the insurer will not be liable under the policy. On the other hand, to the extent that the objective of providing indemnification is a stronger policy in this context, the technicality of whether the tortfeasor is immune from litigation assumes a much smaller degree of importance. It seems probable that in those states where the trend is to assure that a source of indemnification is available, the courts are likely to reject an argument as to the applicability of such tort immunities. However, it may not be appropriate to attempt to speak of all these immunities as an undivided group. For example, in a jurisdiction which affirms the importance of the interspousal immunity, the court might well be inclined to distinguish this type of case on the basis that the policy and goals underlying the establishment of this type of immunity are sufficiently *559 important to warrant separate consideration and treatment.
Widiss at § 2.27 (footnotes deleted, emphasis in original). In Florida a source of indemnification for a worker injured by a co-worker driving an uninsured vehicle is already available, i.e. the benefits of the Workers' Compensation Law. Society's goal of protecting the worker under this circumstance has been achieved. We do not need to torture the meaning of a statute aimed at curing another ill entirely to provide a remedy where one has already been provided.
In addition, the immunity offered through workers' compensation exists not only to protect the employer in exchange for his provision of immediate, guaranteed benefits, but also to protect society by limiting the impact of a work-related injury to the remedy offered. Expanding UM coverage to cover the circumstance before us here would, as Judge Upchurch noted in his dissent in the district court, 443 So.2d at 433, create a large class of uninsured vehicles. The ensuing litigation would roil the waters in an area where the legislature has attempted to calm the seas. Absent a clear statement of intent from the legislature that it considers the benefits of broader UM coverage to outweigh the detriment, we will not disturb its clear and unambiguous statement that coverage exists only when the insured is legally entitled to recover from the tortfeasor.
Accordingly, the decision of the district court is quashed and remanded for further proceedings in accord herewith.
It is so ordered.
BOYD, C.J., and ADKINS, OVERTON, McDONALD and SHAW, JJ., concur.
NOTES
[1] Section 627.727(1) provides in pertinent part:

(1) No automobile liability insurance covering liability arising out of the ownership, maintenance, or use of any motor vehicle shall be delivered or issued for delivery in this state with respect to any motor vehicle registered or principally garaged in this state unless coverage is provided therein or supplemental thereto for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles because of bodily injury, sickness, or disease, including death, resulting therefrom. However, the coverage required under this section shall not be applicable when, or to the extent that, any insured named in the policy shall reject the coverage. (Emphasis added.)
[2] 440.11 Exclusiveness of liability. 

(1) The liability of an employer prescribed in s. 440.10 shall be exclusive and in place of all other liability of such employer to any third-party tortfeasor and to the employee, the legal representative thereof, husband or wife, parents, dependents, next of kin, and anyone otherwise entitled to recover damages from such employer at law or in admiralty on account of such injury or death, except that if an employer fails to secure payment of compensation as required by this chapter, an injured employee, or the legal representative thereof in case death results from the injury, may elect to claim compensation under this chapter or to maintain an action at law or in admiralty for damages on account of such injury or death. In such action the defendant may not plead as a defense that the injury was caused by negligence of a fellow servant, that the employee assumed the risk of the employment, or that the injury was due to the contributory negligence or comparative negligence of the employee. The same immunities from liability enjoyed by an employer shall extend as well to each employee of the employer when such employee is acting in furtherance of the employer's business and the injured employee is entitled to receive benefits under this chapter. Such fellow-employee immunities shall not be applicable to an employee who acts, with respect to a fellow employee, with willful and wanton disregard or unprovoked physical aggression or with gross negligence when such acts result in injury or death or such acts proximately cause such injury or death, nor shall such immunities be applicable to employees of the same employer when each is operating in the furtherance of the employer's business but they are assigned primarily to unrelated works within private or public employment.
[3] In Boynton's uninsured motorist policy, Allstate agreed that:

We will pay damages for bodily injury, sickness, death or disease which you are legally entitled to recover from the owner or operator of an uninsured auto. Injury must be caused by accident and arise out of the ownership, maintenance or use of an uninsured or underinsured auto. (Emphasis added.)
[4] The Fifth District acknowledged conflict with the decision of the Third District in Centennial Insurance Co. v. Wallace which held that when a vehicle is covered to the extent of the law, it could not be considered "uninsured" simply because coverage might not be available to a particular injured party by virtue of the Workers' Compensation Law. We disapprove Centennial Insurance Co. insofar as it conflicts with our holding in this case.
[5] Allstate, citing Reid v. State Farm Fire & Casualty Co., 352 So.2d 1172 (Fla. 1977), asserts in its brief that a valid exclusion in a liability policy does not make a vehicle uninsured for uninsured motorist purposes. In Reid, we held that a vehicle cannot be both an insured and uninsured vehicle under the same policy. The present case is distinguishable because it involves separate policies. Reid is inapplicable.

Also, denial of coverage by Luke's carrier renders the vehicle uninsured within the express terms of Boynton's Allstate policy, which provides: "An uninsured auto is ... [a] motor vehicle for which the insurer denies coverage... ."