[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED

U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
April 9, 2004
THOMAS K. KAHN
CLERK

_____

No. 03-12700

_____

D.C. Docket No. 02-00310-CV-3-RV-MD

RICHARD C. GARES,

Plaintiff-Appellant,

versus

ALLSTATE INSURANCE COMPANY,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Northern District of Florida

_____

**(April 9, 2004)**

Before CARNES and WILSON, Circuit Judges, and JORDAN*, District Judge.

JORDAN, District Judge:

_____

*Honorable Adalberto Jordan, United States District Judge for the Southern District of
Florida, sitting by designation.

As the district court aptly put it, this insurance dispute under Florida law concerning uninsured motorist coverage presents an intersection of the principles announced in *Allstate Ins. Co. v. Boynton,* 486 So.2d 552 (Fla. 1986), and in *Reid v. State Farm Fire & Cas. Co.*, 352 So.2d 1172 (Fla. 1977), and its progeny. The issue is whether an injured person who is an "insured" under multiple automobile policies can seek uninsured motorist benefits pursuant to those policies if the vehicle involved in the accident is a covered vehicle under the liability portion of the policies but there is no liability coverage for the accident due to exclusions.

The district court ruled that *Reid* and its progeny governed, and granted summary judgment in favor of Allstate Insurance Company and against Richard Gares. After surveying Florida law, we agree and affirm.

**I**

Richard Gares is the brother of Wesley Gares and, during the relevant period, resided in the same household as Wesley. Wesley owns Top Gun Muffler, Inc., an automobile repair shop located in Okaloosa County, Florida. Richard is not an employee of Top Gun.

On October 31, 2001, Carnac Kitchens, Inc. delivered one of its trucks to Top Gun for repairs. Wesley drove the truck onto a lift in a manner that caused the truck to proceed off the front of the lift and severely injure Richard, who was visiting

2

Wesley at Top Gun.

Richard sought payment from Top Gun's liability insurer, which tendered its policy limits to him. Richard also made a demand on Allstate Insurance Company, the automobile liability insurer for Carnac Kitchens, the owner of the truck. Allstate denied liability, presumably under *Castillo v. Bickley*, 363 So.2d 792 (Fla. 1978) (automobile owner, absent its own negligence, is not liable for the negligent operation of its automobile while left at a repair shop).

Finally, Richard made a separate demand on Allstate for uninsured motorist benefits under two automobile policies issued by Allstate to Wesley for four other vehicles. Allstate denied coverage, and this lawsuit ensued. The parties have stipulated that if Richard prevails he is entitled to $400,000.00 under the Allstate policies.

**A**

The liability portions of the policies issued to Wesley (which are identical in all relevant respects) obligate Allstate to pay "for all damages a person insured is legally obligated to pay because of bodily injury or property damages." Policy at 3 (Part I, "Bodily Injury and Property Damage"). The parties agree that Wesley is a "person insured" when "using a non-owned auto" (i.e., the Carnac Kitchens truck). *See id.* at 3 (Part I, "Persons Insured").

3

An "insured auto" is defined, in relevant part, as "(1) any auto described on the Policy Declarations and the . . . auto you replace it with," and "(4) a non-owned auto used by you or a resident relative with the permission of the owner[.]" *Id.* at 3-4 (Part I, "Insured Autos").  It is undisputed that the Carnac Kitchens truck is an "insured auto."  Nevertheless, there is no liability coverage for Richard's injuries because of the following exclusions: "(2) auto business operations such as repairing, servicing, testing, . . . of autos;" "(3) a non-owned auto while being used in any business or occupation of a person insured;" and "(6) bodily injury to any person related to a person insured by blood, marriage or adoption and residing in that person insured's household."  *See id.* at 4 (Part I, "Exclusions").

**B**

Under the uninsured motorist portions of the policies, Allstate is obligated to pay "only those damages which a person insured is legally entitled to recover from the owner or operator of an uninsured auto because of bodily injury sustained by a person insured[.]" *Id.* at 7 (Part IV, "Uninsured Motorist Insurance").  The parties agree that Richard is a "person insured" under the uninsured motorist portions because he resided in the same household as Wesley at the time of the accident. *See id.*  They also agree that the Carnac Kitchens truck is an "insured auto" because it was a motor vehicle "(4) operated by [the insured] . . . with the permission of the owner,

4

but not furnished for [the insured's] regular use." *See id.*

The policies define an "uninsured auto," in pertinent part, as follows:

(1) A motor vehicle which has no bodily injury liability bond or insurance policy in effect at the time of the accident.

(2) A motor vehicle, *other than a motor vehicle insured under the liability portion of this policy,* for which the insurer denies coverage.

\* \* \* \* \*

(5) A vehicle insured under the liability portion of a motor vehicle insurance policy which causes bodily injury to you or a resident relative while being operated by a person other than you or a resident relative and which is excluded under the liability portion of the policy.

(6) An underinsured motor vehicle. An underinsured motor vehicle is one which has liability protection in effect and applicable at the time of the accident but in an amount less than the damages the person insured is legally entitled to recover.

*Id.* at 8 (emphasis added). Significantly, the policies also provide that "[a]n uninsured auto is not . . . [a] vehicle insured under the liability portion of a motor vehicle insurance policy, unless that auto causes bodily injury to you or a resident relative *while being operated by a person other than you or a resident relative* and which is excluded under the liability portion of the policy." *Id.* (emphasis added).

Although the Carnac Kitchens truck might initially be thought of as an "uninsured auto" because it is an "underinsured motor vehicle," the definitions quoted above prevent such a result. First, the definition of "uninsured auto" specifically

5

excludes any "motor vehicle insured under the liability portion of this policy," and the truck is, as noted earlier, an "insured auto." Second, the truck cannot be considered an "uninsured auto" because it was being driven by Wesley, the named insured and a resident relative of Richard's.

## II

Faced with these undisputed facts, the district court concluded that there was no uninsured motorist coverage for Richard's injuries under Wesley's Allstate policies. Relying on *Reid v. State Farm Fire & Casualty Co.,* 352 So.2d 1172, 1173-74 (Fla. 1972), and distinguishing *Allstate Ins. Co. v. Boynton,* 486 So.2d 552, 554-55 (Fla. 1986), the district court ruled that the Carnac Kitchens truck could not be both an "insured auto" under the liability portions of the policies and an "uninsured auto" under the uninsured motorist portions of the same policies.

## A

*Reid*, decided by the Florida Supreme Court in 1977, involved a passenger who was injured in an accident involving an automobile driven by her sister, owned by her father, and insured by State Farm. Although the automobile was covered under the policy and the sister was an "insured," the policy contained a clause providing that there was no coverage for bodily injury to any insured or any family member of an insured residing in the same household. Because the passenger lived together with

6

her sister -- an "insured" -- coverage was unavailable if the exclusion was valid. 352 So.2d at 1172-73.

The passenger requested that the exclusion be declared invalid. In the alternative, she sought uninsured motorist coverage under the policy, reasoning that if the exclusion applied, the automobile was rendered "uninsured." The Florida Supreme Court upheld the exclusion, and then rejected the claim for uninsured motorist benefits because the policy provided that "an 'uninsured motor vehicle' may not be the vehicle defined in the policy as the insured motor vehicle:" "We hold that the family car in this case is not an uninsured motor vehicle. It is insured and does not become uninsured because liability coverage may not be available to a particular individual . . . . Here, the family car, which is defined in the policy as the insured motor vehicle, is the same vehicle which [the passenger,] under the uninsured motorist provision of the policy, claims to be an uninsured motor vehicle." *Id.* at 1173-74.

The Florida Supreme Court did not stop there. It expressly distinguished *Lee v. State Farm Mut. Auto. Ins. Co.*, 339 So.2d 670 (Fla. 2d DCA 1976), a case which had, on similar (but not identical) facts, allowed recovery of uninsured motorist benefits. It explained, by citing to *Hartford Accident & Indemnity Co. v. Fonck,* 344 So.2d 595 (Fla. 2d DCA 1977), that in *Lee* (1) the "uninsured motor vehicle" which

caused the injury "was not the same vehicle as the 'insured motor vehicle' named in the policy," and (2) unlike *Reid*, there was no policy provision which provided that "the term 'uninsured motor vehicle' does not include the vehicle named in the policy as the 'insured motor vehicle.'" 352 So.2d at 1174.

Thus, *Reid* holds that uninsured motorist coverage is not available if the claim is made against the same policy which provides liability coverage to the automobile in question and if the policy says that an insured automobile cannot also be considered an uninsured automobile. But *Reid* is not the end of the story.

In 1986, the Florida Supreme Court decided *Boynton*, a case with underlying facts very similar to those here. A Sears auto mechanic was struck by an automobile being repaired by another mechanic. Sears was immune from suit under Florida's workmen's compensation law, *see* Fla. Stat. § 440.11, and the claim against the automobile's lessor, Xerox, was dismissed under *Castillo v. Bickley*, 363 So.2d 792 (Fla. 1978) (automobile owner, absent its own negligence, is not liable for the negligent operation of its automobile while left at a repair shop). The injured mechanic then sought to recover from the tortfeasor's automobile liability insurance carrier, but that carrier denied coverage because of a provision in the policy excluding injuries occurring during the pursuit of a business. *See Boynton*, 486 So.2d at 554. When the injured mechanic claimed that he was entitled to recover uninsured motorist

benefits under his *own* automobile insurance policy (on the theory that the tortfeasor was an uninsured motorist), the Florida Supreme Court had to decide whether *Reid* barred the claim. *Id.*

The Florida Supreme Court did not find *Reid* controlling. It rejected Allstate's argument that the automobile was not uninsured because Xerox had a liability policy that would have provided coverage. "A vehicle is insured [for purposes of Fla. Stat. § 627.727(a)] only when the insurance in question is available to the injured plaintiff." Because Xerox was without fault and could not be held responsible, its "liability insurance was not available to [the injured mechanic]." *Id.* at 555. Similarly unpersuasive was Allstate's argument that the automobile was not "uninsured" because the tortfeasor had a liability policy. As that policy "specifically excluded injuries occurring in the pursuit of a business," it "did not provide coverage for this particular occurrence." *Id.* (discussing *American Fire & Cas. Co. v. Boyd*, 357 So.2d 768 (Fla. 1st DCA 1978)).

Concluding that the automobile was "uninsured" in "the context of the [injured mechanic's] uninsured motorist policy," the Florida Supreme Court addressed *Reid* in a footnote. It said that under *Reid* "a vehicle cannot be both an insured and uninsured vehicle under the *same* policy," and that *Boynton* was distinguishable because it involved "separate policies." 486 So.2d at 555 & n.5. It also added that,

9

under the tortfeasor's policy, an uninsured auto included a "'motor vehicle for which the insurer denies coverage,'" and the tortfeasor's carrier had in fact denied coverage. *Id.*

Significantly, the Florida Supreme Court's opinion in *Boynton* does not say whether the automobile at issue in *Boynton* was also, somehow, an insured automobile under the liability portion of the injured mechanic's policy. The opinion also does not state whether the policy contained a clause, similar to the one in *Reid,* providing that an uninsured automobile could not be an automobile covered under the liability portion of the policy. The lower court decision, however, indicates that there was no such clause. In its opinion, the Fifth District concluded that the vehicle was uninsured under the injured mechanic's policy and did not quote any *Reid*-type language. *See Boynton v. Allstate Ins. Co.,* 443 So.2d 427, 429 (Fla. 5th DCA 1984) (under policy, vehicle was uninsured if (1) it had "no bodily injury liability bond or insurance policy in effect at the time of the accident," (2) it was a vehicle for which the insurer "denie[d] coverage" or became insolvent within 12 months from the date of the accident, or (3) it was a "hit-and-run" vehicle which caused bodily injury to an "insured person"). In other words, the policy at issue in *Boynton* was different (and significantly different) from the one at issue in *Reid*.

The last case in the Florida Supreme Court trilogy is *Brixius v. Allstate Ins. Co.*

10

589 So.2d 236 (Fla. 1991). In that case, a passenger was injured while riding in a car she owned, but which was being driven by an uninsured friend. Because her own Allstate policy excluded coverage for injuries sustained by a named insured, the passenger claimed that her own automobile was uninsured as to her. By a 4-3 vote, the Florida Supreme Court rejected the passenger's argument and held that *Reid* controlled. After all, like the policy in *Reid,* the policy in *Brixius* said that an uninsured automobile was not an automobile which was insured under the policy's liability portion. *Id.* at 237-38.

## B

Florida's intermediate appellate courts have generally concluded that *Reid* controls where there is one policy providing that an automobile insured under the liability portion of the policy cannot also be an uninsured vehicle. They have also sometimes suggested (but not held) that *Boynton* is limited to those situations where there are separate policies, without explaining how a multiple-policy scenario is different. *See, e.g., State Farm Mut. Auto. Ins. Co. v. Palacino*, 562 So.2d 837, 838 (Fla. 4th DCA 1990) (*en banc*); *Hartland v. Allstate Ins. Co.*, 575 So.2d 290, 291 (Fla. 1st DCA 1991).

But in *Nationwide Mutual Fire Ins. Co. v. Olah,* 662 So.2d 980 (Fla. 2nd DCA 1995) (Quince, J.), the Second District applied the rationale of *Reid* in a multiple-

11

policy scenario. In *Olah*, Eileen Lattanzio and others were killed while riding in a car owned by Theodore and Margaret Simon and driven by Daniel Lattanzio. The Simons' vehicle was insured by Allstate, which paid its policy limits to Eileen's estate. There were, however, two other insurance policies issued to Daniel by Nationwide. When Eileen's estate sought payment from Nationwide under the liability and uninsured motorist provisions of Daniel's policies, Nationwide denied coverage and sought a declaratory judgment.

The Nationwide policies provided liability coverage to vehicles being used by Daniel and owned by a non-member of his household, but also had an exclusion for bodily injury to members of the insured's household. As a result, the Simons' vehicle was a covered automobile under the liability portion of the Nationwide policies, but Eileen's injuries were excluded because Eileen was a member of Daniel's household.

The uninsured motorist portion of the Nationwide policies extended coverage for bodily injury sustained by the insured (Daniel) or a relative (Eileen) when the vehicle in which the loss occurred had no insurance coverage or if the coverage afforded was less than the damages suffered. It also stated, however, that an uninsured vehicle was not "any motor vehicle insured under the liability coverage" of the policies. *Id.* at 981-82.

The Second District found these provisions to be unambiguous, and, citing

12

*Reid* and *Brixius,* denied coverage under Nationwide's policies.

> The Simon vehicle was covered under the liability portion of [Daniel's] polic[ies] because it was being operated by [Daniel]. However, [Eileen's] estate cannot recover under the liability coverage because she was a member of the insured's household. Additionally, since the vehicle is insured under the liability portion of the policy, it cannot be uninsured under the UM portion of the policy.

*Id.* at 982.

*Olah* is directly on point, and is the last (and only) word on the subject from Florida's appellate courts. Because this is a diversity case, we must follow *Olah* unless "there is some really persuasive indication that the Florida Supreme Court would go the other way." *KMS Restaurant Corp. v. Wendy's Int'l, Inc.,* No. 03-10759, 2004 WL 396472, *3 (11th Cir. March 4, 2004). Upon reflection, we do not believe the Florida Supreme Court would reach a contrary result. First, the analyses in *Reid, Boynton, and Brixius* focus on the pertinent policy language. Second, the central holding of *Reid*, reaffirmed in *Boynton*, is that if a policy prohibits a vehicle from being both an insured automobile for liability purposes and an uninsured automobile for uninsured motorist purposes, a court cannot decree otherwise. *See Travelers Ins. Co. v. Warren,* 678 So.2d 324, 328 (Fla. 1996) (plurality opinion) ("[I]n *Reid v. State Farm Fire & Cas. Co.,* 352 So.2d 1172 (Fla. 1977), . . . we . . . held that a vehicle cannot be both an uninsured and insured vehicle under the same policy."). Third, the

13

"multiple policy" language of *Boynton* can properly be reconciled with *Reid* and *Brixius* on the ground that the policy in *Boynton* did not provide that a vehicle could not be both an insured automobile for liability purposes and an uninsured automobile for uninsured motorist purposes. If all that matters under *Boynton* is whether there are several policies involved with respect to the underlying accident, regardless of how the policy being sued on defines an uninsured automobile, then the language of the policies will become academic. We see nothing in Florida law that points to such a rule.

### III

The Carnac Kitches truck is a "covered auto" under Welsey's Allstate policies. Because those policies provide that a "covered auto" cannot also be an "uninsured auto," there is no uninsured motorist coverage for Richard's injuries. *See Boynton,* 486 So.2d at 554-55 & n.5; *Reid,* 352 So.2d at 1172-74; *Olah,* 662 So.2d at 982. The district court correctly granted summary judgment in favor of Allstate.

AFFIRMED.

14