PER CURIAM.
In the underlying action, PartsBase.com, Inc. (drawer) filed a one count complaint against SouthTrust Bank (Bank) under section 674.403, Florida Statutes (2000) for damages arising from the payment of a check after the drawer had delivered a stop-payment order. Bank filed a third-party complaint against the payee of the check, Ariba, Inc. (payee). Bank appeals a final judgment finding it liable to the drawer for the full amount of the check ($161,564), and finding no liability on the part of payee.
Bank claims the trial court erred in denying its motions for summary judgment and directed verdict, arguing its rights of subrogation entitled it to raise any defense raised by payee. We agree and reverse. The drawer conceded on several occasions that payee had an absolute defense of release against any attempts by drawer to recover the amount of the stopped check. Hence, Bank, as subrogee of payee, was entitled to the same defense.
Drawer and payee had an ongoing contractual relationship pursuant to a software licensing agreement. At the time, drawer maintained a business checking account with Bank. In partial payment of amounts owed payee under the licensing agreement, drawer issued to payee check number (#) 2472, in the amount $161,564. Payee did not receive the check and in response to payee’s complaints, drawer issued a replacement check for the same amount and requested a stop-payment on check #2472. Bank then inadvertently paid check #2472 in spite of the stop-payment order. Payee negotiated both checks in June and retained all of the funds. The checks appeared on drawer’s July bank statement.
Upon learning that check #2472 had been paid, drawer notified payee that it wanted to rescind the software licensing agreement. After negotiations, the two parties executed a Settlement Agreement and Mutual General Release (Settlement and Release), pursuant to which all outstanding amounts under the licensing agreement would be forgiven, drawer would return or destroy the software in its possession, and payee would pay drawer $500,000. In addition, drawer agreed to release payee from all claims known and unknown as of that date. Specifically, the Settlement and Release provided:
“2. Subject to its rights under this Settlement Agreement, Drawer hereby re *19 leases and forever discharges Payee, and TRADEX, and each of their respective past and present officers, directors, employees, agents, attorneys, affiliates, shareholders, and predecessors in interest (the “Payee Releasees”), and each of them, jointly and severally of and from any and all causes of action, damages, claims, liabilities, debts, attorneys’ fees, costs and demands of whatever kind or nature, in law or in equity, both known and unknown, whether contingent or fixed, that Drawer has had in the past or now has against the Payee Releasees, whether related or unrelated to the Dispute (hereinafter the ‘Release Language’). [e.s.]”
Florida’s adoption of Article 4, Section 403 of the Uniform Commercial Code (U.C.C.), imposes on all Florida banks the obligation to accept stop-payment orders from their customers, and provides a remedy to a customer if a check is paid over a valid stop-payment order. See § 674.403(1), Fla. Stat. (2000). The Bank’s liability, however, is limited, in that:
“[t]he Bank may be liable to its customer for the actual loss incurred by the customer resulting from the wrongful payment of an item contrary to a valid and binding stop-payment order ....” [e.s.]
§ 674.403(3), Fla. Stat. (2000). Thus, if the customer suffers no actual loss, the Bank is not liable for any damages. See Southeast First Nat’l Bank v. Atlantic Telec, Inc., 389 So.2d 1032, 1033 (Fla. 5th DCA1980) (“Simply because a bank pays a check over a stop payment order does not entitle the customer to recover damages against the bank-”). The customer has the burden of establishing the fact and amount of the loss. Id.; § 674.403(3), Fla. Stat. (2000).
The statute makes clear, however, that the drawee bank has the right of subrogation to prevent a windfall. “The drawee is, however, entitled to subrogation to prevent unjust enrichment.” U.C.C. § 4-403 cmt. 7 (2000). Under section 674.407:
“If a payor bank has paid an item over the order of the drawer or maker to stop payment ... or otherwise under circumstances giving a basis for objection by the drawer or maker, to prevent unjust enrichment and only to the extent necessary to prevent loss to the bank by reason of its payment of the item, the payor bank is subrogated.to the rights:
(1) Of any holder in due course on the item against the drawer or maker;
(2) Of the payee or any other holder of the item against the drawer or maker either on the item or under the transaction out of which the item arose; and
(3) Of the drawer or maker against the payee or any other holder of the item with respect to the transaction out of which the item arose.” [e.s.]
§ 674.407, Fla. Stat. (2000); see also E. PeteRS, A Negotiable InstRuments PRIMER 79 (1974) (“The trade-off for requiring banks to accept, stop orders under [§ 674.403(1) ] was the limitation of their liability under [§ 674.403(3) ] and § 674.407].”). The bank’s right to recover from the party who benefitted from the payment is further discussed in the official commentary to the UCC:
“If a bank pays an item over such an order it is prima facie liable, but under subsection (c) of Section 4 — 403 the burden of establishing the fact and amount of loss from such payment is on the customer. A defense frequently interposed by a bank in an action against it for wrongful payment over a stop-payment order is that the drawer or maker suffered no loss because it would have *20 been liable to a holder in due course in any event. On this argument some cases have held that payment cannot be stopped against a holder in due course. Payment can be stopped, but if it is, the drawer or maker is liable and the sound rule is that the bank is subrogated to the rights of the holder in due course. The preamble and paragraph (1) of this section [§ 674.407] state this rule.”
U.C.C. § 4-407 cmt. 1 (2000). “[T]he statute is meant to provide the payor bank with the most comprehensive and effective remedy possible ... unjust enrichment of all defendants joined in the action is not a requirement.” Prof'l Sav. Bank v. Galloway Farm Nursery, Inc., 514 So.2d 76, 77 (Fla. 3d DCA 1987).
As other jurisdictions have held, a bank’s subrogation rights are fixed at the time the check is wrongly honored — i.e., the later acts of the drawer and the payee, where the bank is not a party, cannot strip the bank of its subrogation rights. “[I]t would be inequitable to permit [a] private agreement to defeat the Bank’s subrogation rights which were acquired prior to the execution of the release[].” Morgan Guar. Trust Co. v. Hauser, 22 U.C.C. Rep. Serv.2d (CBC) 851, 1994 WL 123596 (N.Y.Sup.Ct.1994) (mutual releases between parties to the check did not extinguish Bank’s subrogation rights regarding proceeds of mistakenly honored check); see also Mfr.’s Hanover Trust Co. v. Ava Indus., Inc., 98 Misc.2d 614, 414 N.Y.S.2d 425, 426 (N.Y.Sup.Ct.1978) (“It is clear that the [bank], at the time it paid the check, became entitled to any claim arising out of the transaction which [the drawer] had against [the payee] or which [the payee] had against [the drawei"]; and the subsequent settlement of the defendants’ dispute between them in no way altered or extinguished the [bank’s] rights in subro-gation.”).
Here, it is undisputed that drawer executed the Settlement and Release in August 2000, well after both checks had been paid. It released payee from all claims known and unknown as of that date. In its motion for summary judgment against payee, drawer admitted the release barred any claims drawer had against payee. Drawer had previously admitted, in response to payee’s request for admissions, that it had no right to recover or collect from payee the funds paid through check # 2472 because of the release. During the cross-examination of drawer’s first witness regarding its admission as to the effectiveness of the release, counsel stated: “It’s [an] admission. It’s in. We don’t have to talk about this anymore. We admit it.” In closing argument, counsel for drawer admitted: “We did give up our rights against [payee] because we signed a very broad settlement agreement, not knowing that there was this problem.”
The parties also stipulated to a jury instruction stating “[Bank] is the subrogee of both [payee] and [drawer]. Subrogation is the substitution of one person in the place of another....” Drawer also agreed to the following jury instruction: “Section 674.407 is intended to prevent an unfair loss to a Bank by giving the Bank the right to step into the shoes of any party who is legally entitled to the money represented by the check.”
The only legal issue to which drawer did not agree, and the only issue before the trial court on Bank’s motion for summary judgment and at trial, was whether Bank’s rights of subrogation under section 674.407 included the defense of release. According to the official commentary to the U.C.C., they do. Comment 5 states:
“The spelling out of the affirmative rights of the Bank in this section does not destroy other existing rights (Section 1-103). Among others these may *21 include the defense of a payor Bank that by conduct in recognizing the payment a customer has ratified the Bank’s action in paying in disregard of a stop-payment order or right to recover money paid under a mistake.” [e.s.]
UCC § 4-407 cmt. 5 (2000); cf. Allstate Ins. Co. v. Boynton, 486 So.2d 552 (Fla.1986); Allstate Ins. Co. v. Candreva, 497 So.2d 980 (Fla. 4th DCA 1986); Allstate Ins. Co. v. Barba, 487 So.2d 1223 (Fla. 4th DCA 1986); Travelers Indem. Co. v. Integon Gen. Ins. Co., 748 So.2d 362 (Fla. 5th DCA 2000) (all holding that the insurance carrier effectually stands in the uninsured motorist’s shoes and can raise and assert any defense that the uninsured motorist could urge) [e.s.]; see also Sun Bank v. Jakubowski, 583 So.2d 782, 783 (Fla. 5th DCA 1991) (“The subrogee acquires certain rights of the subrogor and is subject to all available defenses the defendant can assert against the subrogor -”). [e.s.]
Bank also contends that drawer’s claim was without merit because drawer ratified the payment of check # 2472 over the stop-payment order by electing to go forward with the Settlement and Release after learning of the payment of the check. Because we find that Bank was entitled to summary judgment or a directed verdict on the issue of release, however, we decline to address the ratification claim.
REVERSED AND REMANDED.
FARMER, C.J., GUNTHER and TAYLOR, JJ., concur.