581 So.2d 1365 (1991)
MICHIGAN MILLERS MUTUAL INSURANCE COMPANY, Appellant,
v.
Dawn BOURKE, Michele Foco, Karl and Natalie Voss, As Personal Representatives of the Estate of Leisa Voss and Rebecca Reeves, As Personal Representative of the Estate of B. Allen Reeves, Appellees.
Nos. 90-01401, 90-01409.
District Court of Appeal of Florida, Second District.
June 7, 1991.
John W. Weihmuller of Butler, Burnette & Pappas, Tampa, for appellant.
Lewis F. Collins, Jr. and Claire L. Hamner of Dickinson, O'Riorden, Gibbons & Shields, P.A., Sarasota, for appellees Dawn Bourke, Karl and Natalie Voss and Rebecca Reeves.
*1366 Peter S. Branning of Peter S. Branning, P.A., Sarasota, for appellee Michele Foco.
RYDER, Acting Chief Judge.
Michigan Millers Mutual Insurance Company seeks review of the trial court's nonfinal order denying its motion for summary judgment and granting appellees' motion for summary judgment determining that appellees are entitled to uninsured motorist coverage. We affirm.
Leisa Voss, deceased, and Bourke and Foco were passengers in a vehicle driven by Allen Reeves, deceased, and owned by Allen and Rebecca Reeves. The Reeves vehicle with its passengers was in an accident in April of 1988, involving a vehicle owned by the School Board of Sarasota County. The driver of the school board's vehicle was negligent in causing the accident. As a result of the accident, Bourke and Foco were seriously injured and Voss and Reeves were killed.
The school board had liability insurance at the time of the accident which provided coverage of $200,000 per person and $325,000 per accident. Michigan Millers admitted that these policy limits were less than the damages sustained by appellees. Michigan Millers also admitted that the school board's employee was negligent in causing the accident.
Michigan Millers had in effect at the time of the accident an insurance policy which named Allen and Rebecca Reeves as the named insureds. The policy insured two vehicles and provided uninsured motorist/bodily injury coverage for each vehicle in the amount of $100,000 per person and $300,000 per accident. The parties have since agreed that if there is coverage, that the aggregate amount of uninsured motorist (UM) coverage available is $400,000. Because Reeves had another vehicle covered under the same policy, he was entitled to stack $100,000 onto the $300,000 occurrence limit.
The school board's liability insurance carrier paid appellees the school board's policy limits of $325,000. Subsequently, Michigan Millers denied appellees' first party claim for UM benefits under its policy. Michigan Millers then filed a complaint for declaratory relief against appellees asking the court to resolve a dispute as to whether appellees were entitled to UM coverage benefits under the insurance policy issued to Allen and Rebecca Reeves. Both Michigan Millers and appellees filed motions for summary judgment. The trial court entered an order denying Michigan Millers motion and granting appellees' motion, thus entitling appellees to UM benefits as a matter of law. Appellees had also filed a complaint alleging bad faith on the part of Michigan Millers. The two cases were consolidated below and the bad faith claim remains pending.
The first issue to be decided is whether the school board's vehicle is an "uninsured motor vehicle" pursuant to section 627.727(3)(b), Florida Statutes (1987). Michigan Millers argues that its UM coverage of $100,000 per person, $300,000 per accident is less than the school board's liability limits of $200,000 per person, $325,000 per accident; therefore, under section 627.727(3)(b), the school board's vehicle is not an "uninsured motor vehicle." See also Shelby Mutual Insurance Co. of Shelby, Ohio v. Smith, 556 So.2d 393 (Fla. 1990).[1] Appellees, on the other hand, argue that the aggregate amount of UM coverage available to them ($400,000) is greater than the school board's liability limits of $325,000 per occurrence; therefore, the school board's vehicle is an "uninsured motor vehicle."
UM coverage is meant to compensate the plaintiff for a deficiency in the tortfeasor's personal liability insurance coverage. See Dewberry v. Auto-Owner's Insurance Co., 363 So.2d 1077 (Fla. 1978); see also Jones v. Travelers Indemnity Co. of Rhode Island, 368 So.2d 1289 (Fla. 1979) (insured entitled to "excess over" amount *1367 received from tortfeasor's carrier); Smith v. State Farm Mutual Automobile Insurance Co., 479 So.2d 160 (Fla. 2d DCA 1985); State Farm Mutual Automobile Insurance Co. v. Diem, 358 So.2d 39 (Fla. 3d DCA 1978). Michigan Millers admitted that appellees sustained damages in excess of the $325,000 paid by the school board's liability policy. Michigan Millers also agreed that the aggregate amount of UM coverage available to appellees is $400,000. Because $400,000 is greater than $325,000, we hold that the school board's vehicle involved in the accident is an "uninsured motor vehicle" under section 627.727(3)(b).
We now turn to the issue of whether appellees are "legally entitled to recover" any funds in addition to those already collected from the school board tortfeasor. Section 768.28, Florida Statutes (1987), provides that the state, its agencies and subdivisions waive sovereign immunity for liability for torts up to the sum of $200,000 for all claims and judgments arising out of one incident or occurrence. Section 768.28 further provides that the amount of a judgment in excess of $200,000 may be reported to the legislature and may be paid in part or in whole only by further act of the legislature. The statute also provides that notwithstanding the waiver discussed above, the state, agency or subdivision may agree to settle a claim made or a judgment rendered against it within the limits of insurance coverage. However, this agreement shall not be deemed to have waived any defense of sovereign immunity in excess of $200,000 per occurrence. § 768.28, Fla. Stat. (1987).
Michigan Millers' policy provides that UM coverage exists for damages that appellees are "legally entitled to recover" from the tortfeasor. Michigan Millers argues that under the authority of Allstate Insurance Co. v. Boynton, 486 So.2d 552 (Fla. 1986), it has the right to assert all substantive defenses that the school board can assert as the tortfeasor. Therefore, Michigan Millers argues that it is able to step into the shoes of the school board tortfeasor and assert the school board's defense of sovereign immunity. Because the school board paid appellees its liability limits of $325,000, Michigan Millers argues that appellees are not "legally entitled to recover" any more funds because of the statutory cap set forth in section 768.28.
In Boynton, the injured party sought to recover under the UM provision of a liability policy. The injured party also had a claim for worker's compensation. The court held that Boynton was not "legally entitled to recover" from the uninsured tortfeasor because the tortfeasor was immune from liability because of the workers' compensation law. The workers' compensation law provides an absolute immunity against suit. Likewise, the other cases cited by Michigan Millers all involve absolute immunities. See, e.g., Gelaro v. State Farm Mutual Automobile Insurance Co., 502 So.2d 497 (Fla. 1st DCA 1987) (UM carrier permitted to assert substantive defense of intra-family immunity, thus precluding recovery under UM policy); Simon v. Allstate Insurance Co., 496 So.2d 878 (Fla. 4th DCA 1986) (UM carrier permitted to assert substantive defense of interspousal immunity).
Appellees argue that the case sub judice does not involve an absolute immunity. Appellees can bring an action against the underinsured school board tortfeasor and reduce their damages to judgment. If the amount of the judgment is more than appellees are able to collect under section 768.28, then appellees are permitted to report the deficiency to the state legislature and may be paid by further act of the legislature. Appellees argue that because section 768.28 provides the possibility of obtaining additional funds through the legislature, the section does not really put a definitive "cap" on the school board's liability.
In the Boynton case, the supreme court established that the UM carrier had the right to step into the shoes of the tortfeasor and assert all substantive defenses available to the tortfeasor. The Boynton court also recognized public policy concerns as follows:
`It seems probable that in those states where the trend is to assure that a *1368 source of indemnification is available, the courts are likely to reject an argument as to the applicability of such tort immunities. However, it may not be appropriate to attempt to speak of all these immunities as an undivided group. For example, in a jurisdiction which affirms the importance of the interspousal immunity, the court might well be inclined to distinguish this type of case on the basis that the policy and goals underlying the establishment of this type of immunity are sufficiently important to warrant separate consideration and treatment.'
Boynton, 486 So.2d at 558-559 (quoting A. Widiss, A Guide to Uninsured Motorist Coverage § 2.27). The Boynton court went on to reason that "[i]n Florida a source of indemnification for a worker injured by a co-worker driving an uninsured vehicle is already available, i.e., the benefits of the Workers' Compensation Law. Society's goal of protecting the worker under this circumstance has been achieved." Id. at 559.
It is well established in Florida that the policy and purpose behind the uninsured motorist statute is to protect persons who are injured or damaged by other motorists who in turn are not insured and cannot make whole the injured party. The statute is designed for protection of injured persons, not for the benefit of insurance companies or motorists who cause damage to others. Brown v. Progressive Mutual Insurance Co., 249 So.2d 429 (Fla. 1971); Decker v. Great American Insurance Co., 392 So.2d 965 (Fla. 2d DCA 1980), review denied, 399 So.2d 1143 (Fla. 1981).
The injured parties here have no other source of indemnification. The facts in this case are distinguishable from the facts in Boynton and the other cases cited by Michigan Millers involving absolute immunities. Public policy concerns dictate that Michigan Millers not be permitted to hide behind immunity where appellees have contracted with it to provide UM coverage and the school board is in fact underinsured. Because the state's sovereign immunity is not absolute, and because of the fact that appellees can reduce their damages to judgment, we hold that appellees are "legally entitled to recover" their damages from the tortfeasor, and therefore are entitled to UM coverage from the Michigan Millers policy for any deficiency.
Because this is a case of first impression in Florida, we certify to the supreme court the following question as being one of great public importance:
WHETHER AN UNINSURED MOTORIST INSURANCE CARRIER CAN ASSERT A TORTFEASOR'S SUBSTANTIVE DEFENSE OF SOVEREIGN IMMUNITY WHEN THE IMMUNITY IS NOT ABSOLUTE AND THE CLAIMANTS HAVE A CLAIM AGAINST THE TORTFEASOR WHICH CAN BE REDUCED TO JUDGMENT AND WHERE THERE EXISTS NO OTHER SOURCE OF INDEMNIFICATION FOR THE CLAIMANTS?
Affirmed.
HALL and PARKER, JJ., concur.
NOTES
[1] Appellees, in supplemental authority, bring our attention to the recent decision of the supreme court in Universal Underwriters Insurance Company v. Morrison, 574 So.2d 1063 (Fla. 1990). However, Universal Underwriters is distinguishable from the case sub judice because the argument made in Universal Underwriters was not offered nor present in the record here.