607 So.2d 418 (1992)
MICHIGAN MILLERS MUTUAL INSURANCE COMPANY, Petitioner,
v.
Dawn BOURKE, et al., Respondents.
No. 78221.
Supreme Court of Florida.
November 5, 1992.
*419 John W. Weihmuller of Butler, Burnette & Pappas, Tampa, for petitioner.
Lewis F. Collins, Jr. and Claire L. Hamner, Dickinson, Gibbons, Shields, Partridge, Dahlgren & Collins, P.A., and Peter S. Branning and Susan J. Silverman, Peter S. Branning, P.A., Sarasota, for respondents.
Louis K. Rosenbloum, Levin, Middlebrooks, Mabie, Thomas, Mayes & Mitchell, P.A., Pensacola, amicus curiae, for The Academy of Florida Trial Lawyers.
OVERTON, Justice.
Michigan Millers Mutual Insurance Company (Michigan Millers) petitions this Court to review Michigan Millers Mutual Insurance Co. v. Bourke, 581 So.2d 1365 (Fla.2d DCA 1991), in which the district court certified the following question as one of great public importance:
WHETHER AN UNINSURED MOTORIST INSURANCE CARRIER CAN ASSERT A TORTFEASOR'S SUBSTANTIVE DEFENSE OF SOVEREIGN IMMUNITY WHEN THE IMMUNITY IS NOT ABSOLUTE AND THE CLAIMANTS HAVE A CLAIM AGAINST THE TORTFEASOR WHICH CAN BE REDUCED TO JUDGMENT AND WHERE THERE EXISTS NO OTHER SOURCE OF INDEMNIFICATION FOR THE CLAIMANTS.
Id. at 1368. We have jurisdiction. Art. V, § 3(b)(4), Fla. Const. We answer the certified question in the negative and approve the decision below to the extent it is consistent with the views expressed in this opinion.
The relevant facts are not in dispute and were set forth by the district court as follows:
Leisa Voss, deceased, and [Dawn] Bourke and [Michele] Foco were passengers in a vehicle driven by Allen Reeves, deceased, and owned by Allen and Rebecca Reeves. The Reeves vehicle with its passengers was in an accident in April of 1988, involving a vehicle owned by the School Board of Sarasota County. The driver of the school board's vehicle was negligent in causing the accident. As a result of the accident, Bourke and Foco were seriously injured and Voss and Reeves were killed.
The school board had liability insurance at the time of the accident which provided coverage of $200,000 per person and $325,000 per accident. Michigan Millers admitted that these policy limits were less than the damages sustained by appellees. Michigan Millers also admitted that the school board's employee was negligent in causing the accident.
Michigan Millers had in effect at the time of the accident an insurance policy which named Allen and Rebecca Reeves as the named insureds. The policy insured two vehicles and provided uninsured motorist/bodily injury coverage for each vehicle in the amount of $100,000 per person and $300,000 per accident. The parties have since agreed that if there is coverage, that the aggregate amount of uninsured motorist (UM) coverage available is $400,000. Because Reeves had another vehicle covered under the same policy, he was entitled to stack $100,000 onto the $300,000 occurrence limit.
The school board's liability insurance carrier paid appellees the school board's *420 policy limits of $325,000. Subsequently, Michigan Millers denied appellees' first party claim for UM benefits under its policy. Michigan Millers then filed a complaint for declaratory relief against appellees asking the court to resolve a dispute as to whether appellees were entitled to UM coverage benefits under the insurance policy issued to Allen and Rebecca Reeves. Both Michigan Millers and appellees filed motions for summary judgment. The trial court entered an order denying Michigan Millers['] motion and granting appellees' motion, thus entitling appellees to UM benefits as a matter of law.
Bourke, 581 So.2d at 1366. The district court affirmed and certified the aforementioned question to this Court.
Before reaching the certified question, we address Michigan Miller's assertion that the school board's motor vehicle is not an uninsured motor vehicle under section 627.727, Florida Statutes (1987). The relevant portion of that statute states:
(3) For the purpose of this coverage, the term "uninsured motor vehicle" shall, subject to the terms and conditions of such coverage, be deemed to include an insured motor vehicle when the liability insurer thereof:
... .
(b) Has provided limits of bodily injury liability for its insured which are less than the limits applicable to the injured person provided under uninsured motorist's coverage applicable to the injured person.
§ 627.727, Fla. Stat. (1987). Michigan Millers contends that the plain language of section 627.727 requires the comparison between applicable liability coverage and applicable uninsured motorist coverage be conducted on a "per person" basis. Under this analysis, the school board's vehicle would not qualify as an "uninsured motor vehicle" because the uninsured motorist coverage available to respondents Foco, Bourke, and Voss on a per person basis ($100,000) is less than the school board's per person liability limit ($200,000), while respondent Reeves' uninsured motorist coverage ($200,000) equals the per person limit of liability coverage.
The parties have stipulated that there is an aggregate amount of uninsured motorist coverage in the amount of $400,000 and that the school board had insurance coverage in the amount of $325,000. Thus, the issue turns on whether the "injured person" language of the statute precludes an aggregation of the claims of multiple injured insureds when determining uninsured motorist coverage. We find it does not. As illustrated by this case, multiple claims may exhaust limited liability coverage. This, in turn, may result in some or all of the claimants receiving less than the per person limits of coverage. Were we to accept Michigan Miller's interpretation of the statute, per person policy limits would be met for purposes of precluding uninsured motorist coverage, but those limits would not be satisfied due to multiple claims against the tortfeasor's aggregate coverage. As noted by the district court, such a finding would defeat the purpose of uninsured motorist coverage  that purpose being the compensation of an injured plaintiff for a deficiency in the tortfeasor's insurance. Accordingly, we hold that the school board's vehicle in this case is an "uninsured motor vehicle" under section 627.727(3)(b).
We next address the issue of whether Michigan Millers can assert the school board's substantive defense of sovereign immunity to avoid payment of the uninsured motorist coverage in this case. Section 627.727 limits an insured's recovery of uninsured motorist benefits to that which the insured is "legally entitled to recover" from the uninsured motorist.[1] Michigan *421 Millers states that our decision in Allstate Insurance Co. v. Boynton, 486 So.2d 552 (Fla. 1986), holds that an uninsured motorist carrier can assert whatever substantive defenses or immunities that would be available to the uninsured motorist. Thus, Michigan Millers contends that because section 768.28, Florida Statutes (1987), limits any recovery against the school board to $100,000 per person and $200,000 per accident, those same limits can be raised as a defense on its behalf as well.
In Boynton, we stated that the plain meaning of section 627.727 would appear to require that the insured must have a claim against the tortfeasor that could be reduced to judgment in a court of law. 486 So.2d at 555. We additionally noted in Boynton that the insurer has available all substantive defenses the tortfeasor could have raised, and, consequently, under uninsured motorist coverage, the uninsured motorist carrier pays only if the tortfeasor would have to pay were the claim to be made directly against the tortfeasor. Id. at 557.
Our decision in Boynton turned on the immunity afforded the tortfeasor under the worker's compensation statute. In Boynton, we held that the phrase "legally entitled to recover" in the context of section 627.727(1) does not encompass claims where the insured tortfeasor is immune from liability because there is a statutory bar to an action against the insured tortfeasor, but for which bar, recovery would lie. 486 So.2d at 553-54. In reaching that determination, we noted that the benefits of the Workers' Compensation Law already provided an alternative source of recovery for the injured worker which achieved society's goal of protecting the worker and protected employers in exchange for their provision of immediate, guaranteed benefits. That is not the case before us here.
The limited immunity afforded under section 768.28 does not prohibit a plaintiff from bringing an action and obtaining a judgment for damages against the tortfeasor as does the absolute immunity afforded under the workers' compensation statute. Additionally, unlike the workers' compensation statute, under sovereign immunity a claims bill may be filed with the legislature for any amount exceeding the limits of the statute. As we noted in Cauley v. City of Jacksonville, 403 So.2d 379, 386-87 (Fla. 1981):
The sovereign immunity issue has been regularly before the courts because prohibition against recovery for governmental negligence is harsh and resulted in considerable injustice.
... It is important to note that, although section 768.28 imposes a ... ceiling on tort recovery against government in the judicial forum, the section specifically provides that one suffering injuries in excess of the ceiling may seek additional relief by petition to the legislature.
Further, and more important, in Gerard v. Department of Transportation, 472 So.2d 1170, 1172-73 (Fla. 1985), and Berek v. Metropolitan Dade County, 422 So.2d 838, 840-41 (Fla. 1982), we expressly held that section 768.28 authorizes the rendition of a judgment in excess of the amount the state can be required to pay as a preliminary step to seeking a claims bill with the legislature.
We also note the wording of the sovereign immunity statute regarding insurance coverage. In section 768.28, the legislature stated:
Notwithstanding the limited waiver of sovereign immunity provided herein, the state or an agency or subdivision thereof may agree, within the limits of insurance coverage provided, to settle a claim made or a judgment rendered against it without further action by the Legislature, but the state or agency or subdivision thereof shall not be deemed to have waived any defense of sovereign immunity or to have increased the limits of its liability as a result of its obtaining insurance coverage for tortious acts in excess of the $100,000 or $200,000 waiver provided above.
*422 § 768.28(5), Fla. Stat. (1987) (emphasis added). This wording reflects that the legislature specifically recognized that the limits under the statute were discretionary and could be increased if insurance coverage was provided.
In conclusion, section 768.28 authorizes the rendition of a judgment in excess of the amount the State can be required to pay due to sovereign immunity. Furthermore, the legislature has determined that, in addition to allowing discretionary recovery through a legislative claims bill, the limits of the sovereign immunity statute may be exceeded when insurance coverage is available. We find that the immunity defense available under section 768.28 is not absolute within the meaning of the term "legally entitled to recover" so as to allow such a defense to be raised substantively by an insurance carrier. Consequently, the sovereign immunity defense is not available to Michigan Millers.
Accordingly, the decision of the district court is approved.
It is so ordered.
BARKETT, C.J., and McDONALD, SHAW, GRIMES, KOGAN and HARDING, JJ., concur.
NOTES
[1] Section 627.727(1), Florida Statutes (1987), provides, in part:

No motor vehicle liability insurance policy shall be delivered or issued for delivery in this state with respect to any specifically insured or identified motor vehicle registered or principally garaged in this state unless uninsured motor vehicle coverage is provided therein or supplemental thereto for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles because of bodily injury, sickness, or disease, including death, resulting therefrom.
(Emphasis added.)