NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING
MOTION AND, IF FILED, DETERMINED

IN THE DISTRICT COURT OF APPEAL

OF FLORIDA

SECOND DISTRICT


STATE FARM MUTUAL AUTOMOBILE )
INSURANCE COMPANY, )
)
     Appellant, )
)
v. ) Case No. 2D14-1402
)
ADAM SMITH, JAMES and ELIZABETH )
MOTZENBECKER, and CHELSEA )
ACKERMECHT, )
)
     Appellees. )
_____)

Opinion filed June 3, 2016.

Appeal from the Circuit Court for Sarasota
County; Kimberly Carlton Bonner, Judge.

Mark D. Tinker and Charles W. Hall of
Banker Lopez Gassler P.A., St.
Petersburg, for Appellant.

Kerry E. Mack and Jacqulyn Mack of Mack
Law Firm Chartered, Englewood; and
Mark A. Boyle and Amanda K. Anderson
of Boyle, Gentile & Leonard, P.A., Ft.
Myers, for Appellee Adam Smith.

No appearance for remaining Appellees.


SALARIO, Judge.

State Farm Mutual Automobile Insurance Company appeals a final judgment holding it liable to Adam Smith for $150,000 pursuant to the uninsured motorist provisions of an automobile insurance policy. Resolution of the appeal hinges on two legal questions: (1) whether the policy by its terms extends uninsured motorist coverage to Smith and, if it does not, (2) whether that failure impermissibly limits the uninsured motorist coverage State Farm was required to provide under section 627.727, Florida Statutes (2006), the uninsured motor vehicle insurance statute. We answer both questions in the negative, reverse the judgment of the trial court, and remand for further proceedings consistent with this opinion.

I.

On July 30, 2006, Smith was injured in a car accident. At the time, he was driving a Nissan 300 ZX purchased by James and Elizabeth Motzenbecker and titled in the name of Elizabeth Motzenbecker. The Motzenbeckers gave the car to their daughter, Chelsea Ackermecht, for her own use. At the time of the accident, Smith was driving Ackermecht's car, with her permission, while she was a passenger in the vehicle. The accident happened when Smith attempted a right turn from the left lane and collided with a car waiting at a red light on the intersecting street.

The Motzenbeckers and Ackermecht were insured by State Farm under a policy issued to Elizabeth Motzenbecker that extended both liability and uninsured motorist coverage (the Motzenbecker policy). Smith was insured under the liability and uninsured motorist provisions of a separate policy that State Farm issued to Smith's mother (the Smith policy). The Smith policy extended liability coverage to Smith for his

use of his mother's car as well as for any other car that he used but did not own—including the car at issue—subject to exceptions that are not applicable here.

In 2007, Smith filed this action against the Motzenbeckers and Ackermecht on the theory that they negligently failed to maintain the brakes on the car. The Motzenbeckers and Ackermecht tendered that claim to State Farm under the liability provisions of the Motzenbecker policy. State Farm filed a declaratory judgment action alleging that the household exclusion in the Motzenbecker policy excluded coverage for Smith's claim because Smith was an insured under that policy by virtue of having been permitted to drive the car.[1] The trial court granted summary judgment to State Farm, and this court affirmed. Motzenbecker v. State Farm Mut. Auto Ins. Co., 123 So. 3d 600 (Fla. 2d DCA 2013), rev. denied, 143 So. 3d 921 (Fla. 2014).

While the declaratory litigation concerning the Motzenbeckers' and Ackermecht's entitlement to liability coverage for Smith's claim under the Motzenbecker policy was ongoing, Ackermecht filed a lawsuit against Smith seeking compensation for injuries she sustained in the accident on the theory that he negligently operated the vehicle. Smith tendered Ackermecht's claim to State Farm under the liability provisions of the Smith policy. State Farm provided Smith with a defense and later paid Ackermecht the limits of liability under the Smith policy in satisfaction of her claim.

Following State Farm's tender of limits on Ackermecht's claim, Smith amended his complaint in this action to include a claim against State Farm for uninsured motorist benefits under the Smith policy. State Farm counterclaimed for a declaration

---

[1]That exclusion provided that the Motzenbecker policy did not provide coverage for any bodily injury to "any insured or any member of an insured's family residing in the insured's household."

that it was not liable because the Motzenbeckers' car was not an uninsured motor vehicle as defined by the Smith policy and, as a result, Smith by definition was not entitled to coverage under the uninsured motorist provisions of the Smith policy.

State Farm moved for summary judgment on its counterclaim arguing that the uninsured motorist provisions of the Smith policy did not extend coverage to Smith in this case because the Smith policy defined the term "uninsured motor vehicle" to exclude any motor vehicle "insured under the liability coverage of this policy" and that the Motzenbecker's car was insured under that coverage because Smith was driving it at the time of the accident.[2]  State Farm also asserted that the Motzenbeckers' car was deemed insured under the liability coverage of the Smith policy because the liability provisions of that policy had afforded bodily injury liability coverage to Smith for Ackermecht's claim arising out of Smith's operation of the vehicle.  The trial court disagreed, held that "the claimed exclusion does not apply to [Smith] under the facts of this case," and denied the motion.

The trial court later entered a final judgment against State Farm on the counterclaim and set Smith's claims against the Motzenbeckers and Ackermecht for a jury trial.  The jury found liability, apportioned ninety-two percent of the fault to the Motzenbeckers and Ackermecht and eight percent to Smith, and awarded damages of $214,860.  The damage award was later limited to the Smith policy's limits of $150,000, and a final judgment was entered.  State Farm timely appeals.

---

[2]The only exception to this provision in the policy was for circumstances where an insured suffered bodily injury while a vehicle was being driven by someone other than the insured, spouse, or relative. Those circumstances are not present in this case.

II.

We now review the trial court's decision that the Smith policy's exclusion of vehicles insured under the liability provisions of the policy from the definition of "uninsured motor vehicle" does not apply in this case. State Farm argues that the exclusion applies under the plain language of the policy, and we agree. Because Smith also argues, as he did in the trial court, that to the extent this provision applies, it violates public policy by affording him less uninsured motorist coverage than section 627.727 requires, we address why that issue does not provide an alternative basis for affirmance. Because the appeal involves issues of contract and statutory construction decided by summary judgment, our review is de novo. See Motzenbecker, 123 So. 3d at 602.

A.

We first address the basis upon which the trial court decided the case. The issue boils down to whether the provision governing vehicles insured under the liability coverage of the Smith policy unambiguously precludes uninsured motorist coverage for Smith's injuries. Where the language of an insurance policy is unambiguous, we are required to interpret it "in accordance with the plain meaning so as to give effect to the policy as written." Fla. Peninsula Ins. Co. v. Cespedes, 161 So. 3d 581, 584 (Fla. 2d DCA 2014). A provision in a policy is ambiguous, however, when its language can bear more than one reasonable interpretation—one that grants coverage and another that limits or denies it. Auto-Owners Ins. Co. v. Anderson, 756 So. 2d 29, 34 (Fla. 2007). If the policy is ambiguous, we construe it in favor of

coverage.  N. Pointe Cas. Ins. Co. v. M & S Tractor Servs., Inc., 62 So. 3d 1281, 1283

(Fla. 2d DCA 2011).

Turning to the provisions at issue here, Section III of the Smith policy is

titled "Uninsured Motor Vehicle."  It extends coverage to any insured under the policy

"for damages for **bodily injury** [the] **insured** is legally entitled to collect from the owner

or driver of an **uninsured motor vehicle**."  The term "uninsured motor vehicle" is

defined to include any "land motor vehicle the ownership, maintenance, or use of which

is" either uninsured or insured in an amount that is insufficient to cover the claimant's

injuries.  However, the Smith policy carves certain categories of vehicles out of this

broad definition—and thus out of the uninsured motorist coverage extended by the

policy—by providing, in relevant part, as follows:

> An **uninsured motor vehicle** does not include a land
> motor vehicle:
>
> 1. insured under the liability coverage of this policy.
>    However, any such vehicle will be deemed to be
>    an **uninsured motor vehicle** for bodily injury
>    sustained by **you, your spouse,** or any **relative**
>    while the vehicle is being operated by a **person**
>    other than **you, your spouse**, or any **relative.**

Whether this language unambiguously precludes coverage depends on

what it means to be "insured under the liability coverage of the policy."  As a result, we

must read this provision together with the terms of the policy's liability coverage.  See

Cespedes, 161 So. 3d at 584 (explaining that a policy should be "read . . . as a whole"

so as to "give every provision its full meaning" (quoting Washington Nat'l Ins. Corp. v.

Ruderman, 117 So. 3d 943, 948 (Fla. 2013))).  Section I of the policy titled "Liability

Coverages" provides that State Farm will "pay damages which an **insured** becomes

- 6 -

legally obligated to pay" because of bodily injury or property damage "resulting from the ownership, maintenance, or use of *your car*." "Your car" is defined as the car identified in the policy declarations, in this case a Saturn station wagon owned by Smith's mother.

In addition, the "Liability Coverages" section of the State Farm policy extends the liability coverage applicable to "*your car*" "to the use, by an *insured*, of a *newly acquired car*, *a temporary substitute car* or a *non-owned car*." A "non-owned" car is defined, in relevant part, as "a car not owned, registered or leased by" an insured but in the lawful possession of the insured at the time the insured uses it.

Reading the terms of the liability coverage together with the definition of uninsured motor vehicle, we conclude that the Smith policy's language is unambiguous and that the Motzenbeckers' car, when used by Smith, was "insured under the liability coverage of this policy." The liability provisions of the policy plainly afford coverage for "your car" when owned, maintained, or operated by an insured as well as for any "non-owned car" when operated by an insured. The Motzenbeckers' car was a "non-owned car" and Smith was an insured. As a result, the Motzenbeckers' car was not an uninsured motor vehicle because it was insured under the policy's liability coverage— indeed, State Farm paid out its liability limits under that coverage—and Smith was not entitled to uninsured motorist coverage under the policy's terms. In <u>Nationwide Mut. Fire Ins. Co. v. Olah</u>, 662 So. 2d 980, 982 (Fla. 2d DCA 1995), this court held that policy language that was materially identical to the language here was "clear and unambiguous" and precluded recovery by a passenger in a "non-owned car" driven by her husband under the uninsured motorist provisions of the husband's policy. Nothing in the facts of this case or the language of this policy suggests a different result.

Smith asserts that the policy is ambiguous because the language "a land motor vehicle . . . insured under the liability coverage of this policy" can reasonably be read as referring only to the car listed in the policy declarations—i.e., his mother's Saturn. We disagree. The Smith policy uses the specific term "your car" when it refers to the car listed in the policy declarations. The language at issue here unambiguously refers to a broader class of vehicles than the single vehicle listed as "your car" because the policy also classifies any "non-owned car" driven by an insured as covered under the liability provision. The Smith policy's use of the indefinite article "a" with the term "land motor vehicle" as modified only by the restriction that such vehicle be one that is "insured under the liability coverage of this policy" necessarily refers to any such vehicle covered by the policy's liability provisions. See generally Retreat at Port of the Islands, LLC v. Port of the Islands Resort Hotel Condo. Ass'n, 181 So. 3d 531, 533 (Fla. 2d DCA 2015) ("Linguistically, 'a' refers to 'any or each' of a type when used with a subsequent restrictive modifier." (quoting Webster's Third New Int'l Dictionary 1 (2d ed. 1986))). The provision cannot mean only the specifically named vehicle under the Smith policy when that class of motor vehicles covered under the liability coverage of the policy includes another class of covered vehicles, including the vehicle driven by Smith during the accident.

Smith also asserts that we should deem the policy ambiguous because it does not define the phrase "insured under the liability coverage of this policy." That argument both runs counter to our decision in Olah and ignores settled law that the absence of a definition for a policy term does not render an otherwise unambiguous policy term ambiguous. See Swire Pac. Holdings, Inc. v. Zurich Ins. Co., 845 So. 2d

- 8 -

161, 166 (Fla. 2003); see also State Farm Fire & Cas. Ins. Co. v. CTC Dev. Corp., 720 So. 2d 1072, 1076 (Fla. 1998) ("The lack of a definition of an operative term in a policy does not necessarily render the term ambiguous and in need of interpretation by the courts.").

Finally, Smith argues that the policy "fails to take into account the possibility of liability arising from negligent maintenance of a vehicle." This argument is at odds with the terms of the policy—which expressly extends uninsured motorist coverage to maintenance claims, but excludes it for certain categories of vehicles—and is irrelevant to the question of whether the policy is ambiguous. The Smith policy unambiguously defines the class of vehicles excluded from the definition of uninsured motor vehicle, and the Motzenbeckers' car, when used by Smith, is so excluded.

B.

Having determined that the policy unambiguously does not provide uninsured motorist coverage to Smith, we now consider whether its failure to do so runs afoul of section 627.727. We hold that it does not because the Motzenbeckers' car was an insured vehicle under the Smith policy when it was used by Smith. On the facts and arguments presented in this case, the statute does not otherwise require that State Farm extend uninsured motorist coverage to him.

Although parties to a contract—insurance contracts included—are generally free to structure a bargain as they see fit, section 627.727 substantially limits the freedom to contract for uninsured motorist coverage. See Salas v. Liberty Mut. Fire Ins. Co., 272 So. 2d 1, 5 (Fla. 1972) ("As a creature of statute rather than a matter for contemplation of the parties in creating insurance policies, the uninsured motorist

protection is not susceptible to the attempts of the insurer to limit or negate that protection.").  Our supreme court has held that the statute "was enacted to provide relief to innocent persons who are injured through the negligence of an uninsured motorist" and, as such, that this protection cannot "be 'whittled away' by exclusions and exceptions."  Young v. Progressive Se. Ins. Co., 753 So. 2d 80, 83 (Fla. 2000) (quoting Mullis v. State Farm Mut. Auto. Ins. Co., 252 So. 2d 229, 238 (Fla. 1971)).  For that reason, a policy that provides "less [uninsured motorist] coverage than required by" section 627.727 is deemed void as against public policy.  Id.

Determining whether a policy provision extends less coverage than required by section 627.727 begins with the language of the statute.  See Travelers Commercial Ins. Co. v. Harrington, 154 So. 3d 1106, 1111 (Fla. 2014) (framing the issue as whether a policy exclusion "conflicts" with the provisions of the statute).  The statutory mandate for uninsured motorist coverage is contained in the first sentence of section 627.727(1), which provides as follows:

> No motor vehicle liability insurance policy which provides bodily injury liability coverage shall be delivered or issued for delivery in this state with respect to any specifically insured or identified motor vehicle . . . unless uninsured motor vehicle coverage is provided therein or supplemental thereto for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles because of bodily injury . . . resulting therefrom.

In addition, section 627.727(3)(c) identifies three circumstances in which an insured motor vehicle will be treated as uninsured for purposes of the statutory mandate to provide uninsured motorist coverage.  Read as a whole, then, the statute requires that a policy afford uninsured motorist coverage for two categories of claims: (1) claims

- 10 -

involving uninsured motor vehicles and (2) claims involving insured motor vehicles in the circumstances the statute identifies. Id.

1.

The first question is thus whether the Motzenbeckers' car was uninsured or insured within the meaning of the statute. Section 627.727 does not define those terms. A long line of cases makes clear, however, that a vehicle is deemed insured under section 627.727 where the policy under which the claim for uninsured motorist benefits is made extends liability coverage to the insured in connection with the vehicle in question. See, e.g., Harrington, 154 So. 3d at 1112 (describing a "long line of well-established precedent" under which a vehicle cannot be treated as "both insured and uninsured under the same policy"); Smith v. Valley Forge Ins. Co., 591 So. 2d 926, 927 (Fla. 1992) (holding that passenger in insured vehicle was not entitled to benefits under section 627.727 where the policy excluded coverage for use of vehicle "owned by or furnished or available for the regular use of you or any family member"). As set forth above, the Motzenbeckers' car was insured under the liability provisions of the Smith policy. It is thus properly treated as insured for the purposes of determining whether section 627.727 required State Farm to provide uninsured motorist coverage to Smith.

The foundational case on this issue is Reid v. State Farm Fire & Cas. Co., 352 So. 2d 1172 (Fla. 1977). There, the plaintiff was injured while a passenger in a family car driven by her sister and sought coverage under the liability and uninsured motorist provisions of a State Farm policy insuring the car. Id. at 1172. State Farm denied liability coverage based on an exclusion applicable to claims by any insured or certain family members and denied uninsured motorist coverage based on a policy

- 11 -

provision that an "uninsured motor vehicle" did not include the insured motor vehicle identified in the policy.  Id. at 1172-73.  On conflict review, the supreme court approved a decision of the Fourth District affirming a summary judgment in State Farm's favor.  Id. at 1174.

The Reid court held that because the vehicle was insured under the liability provisions of the policy, its definition of "uninsured motor vehicle" to exclude the insured motor vehicle named in the policy was not prohibited by section 627.727.  Id. That the liability provisions of the policy excluded coverage for the plaintiff's injuries— and, as a result, that the plaintiff did not receive liability payments—did not alter Reid's conclusion that the vehicle "is insured and it does not become uninsured because liability coverage may not be available to a particular individual."  Id. at 1173.

Fourteen years later, in Brixius v. Allstate Ins. Co., 589 So. 2d 236, 237 (Fla. 1991), the supreme court held that a policy definition of the term "uninsured motor vehicle" that excluded "a vehicle defined as an insured auto under the liability portion of this policy" did not conflict with section 627.727.[3]  That case involved a passenger injured in an accident in which her car was driven by an uninsured friend.  Id. at 237. The insurer denied liability coverage because the policy excluded such coverage for named insureds and denied uninsured motorist coverage because the vehicle was insured under the policy.  Id.  The supreme court held that the case was controlled by Reid and that the statute did not "require [that] uninsured motorist benefits be provided

---

[3]Following Brixius, section 627.727 was amended to include subsection (3)(c) related to certain exceptions that, as set forth in this opinion, do not require the application of the uninsured motorist provisions to these facts. See Travelers Ins. Co. v. Warren, 678 So. 2d 324, 328 (Fla. 1996) (plurality opinion).

an insured when liability benefits are unavailable because of a valid liability exclusion in the same policy under which uninsured motorist benefits are sought." Id.

The core holding of these cases is that where a vehicle is insured under the liability provisions of an automobile insurance policy, it will not simultaneously be deemed uninsured under section 627.727(1). See also Harrington, 154 So. 3d at 1112; Smith, 591 So. 2d at 927. This is true even where, as here, the liability provisions of a policy do not extend coverage to the specific plaintiff and accident at issue under the given facts. See Harrington, 154 So. 3d at 1112.

This court's decision in Olah shows how these principles apply here. In Olah, the plaintiff was the personal representative of the estate of a woman who died while riding in a friend's car driven by the deceased's husband. 662 So. 2d at 981. The friend had insurance under one policy, and the husband had insurance under a second. Id. Because the limits of the friend's policy did not satisfy the plaintiff's damages, she sought coverage under the liability and uninsured motorist provisions of the husband's policy. Id. The insurer sued for declarations (1) that the policy contained a household exclusion that excluded coverage for "bodily injury to any Insured or any member of an Insured's family residing in the same household" and (2) that uninsured motorist coverage was unavailable because the vehicle was insured under the liability portion of the husband's policy. Id. The trial court granted summary judgment to the insurer as to the liability coverage but entered judgment against it under the uninsured motorist provisions, and the insurer appealed. Id.

- 13 -

In an opinion authored by then-Judge Quince, this court reversed. Id. at 983. Relying on Reid and Brixius, the court held that the friend's car was insured under the liability provisions of the husband's policy, explaining as follows:

> The [friend's] vehicle was covered under the liability portion of [the husband's] policy because it was . . . being operated by [the husband]. However, [the plaintiff] cannot recover under the liability coverage because she was a member of the insured's household. Additionally, since the vehicle is insured under the liability portion of the policy, it cannot be uninsured under the UM portion of the policy. This type of situation was addressed by the supreme court in Reid . . . .

Id. at 982 (emphasis added). The court identified other cases where, as here, the plaintiffs' claims implicated different policies that provided insurance separately to owners like the Motzenbeckers and drivers like Smith and in which the drivers' insurance carriers were required to extend uninsured motorist coverage. Id. (discussing Lee v. State Farm Mut. Auto Ins. Co., 339 So. 2d 670 (Fla. 1976); Deville v. Allstate Ins. Co., 603 So. 2d 556 (Fla. 3d DCA 1992)). The Olah court found these cases distinguishable because, as here, "the vehicle [involved in the accident] was not . . . insured under the liability portion" of the policy directly applicable to the driver. Id.

This reasoning resolves the question of whether the Motzenbeckers' car was uninsured or insured as to the Smith policy in this case. Like the plaintiff in Olah, Smith was an insured under two insurance policies—the Motzenbecker policy and the Smith policy. As in Olah, the Motzenbecker policy was insufficient to respond to Smith's injuries and the liability provisions of the Smith policy applied to the vehicle but excluded coverage for Smith's injuries in this particular accident. Like the husband's policy in Olah, the Smith policy provides that any vehicle "insured under the liability coverage of this policy" is excluded from the definition of "uninsured motor vehicle." The necessary

- 14 -

result is that the Motzenbeckers' car is insured under the Smith policy and is therefore outside the scope of section 627.727(1)'s requirement that State Farm extend uninsured motorist coverage to Smith.  Id. at 982; see also Gares v. Allstate Ins. Co., 365 F.3d 990, 991, 995 (11th Cir. 2004) (determining that an insured under multiple policies was not entitled to uninsured motorist benefits where "the vehicle involved in the accident is a covered vehicle under the liability portion of the policies but there is no liability coverage for the accident due to exclusions" and noting that "Olah is directly on point").  The supreme court has recently cited Olah with approval for the proposition that it has "historically upheld" policy definitions of the type at issue here against challenge under section 627.727.  Harrington, 154 So. 3d at 1111.[4]

The dissent's effort to distinguish Olah and its application of Reid and Brixius is not convincing.  It first argues that because the injured party in Olah was a member of the driver's family, that case necessarily implicated a concern—that the

---

[4]Although the parties have not cited it, we note that in Allstate Insurance Co. v. Boynton, 486 So. 2d 552, 555 (Fla. 1986)—a case decided between Reid and Brixius—the supreme court held that a motor vehicle is uninsured within the meaning of section 627.727(1) where, even though there is an insurance policy that provides coverage, the coverage in question is not available to the plaintiff.  In Boynton, the plaintiff was an auto mechanic who was injured when he was struck by a car on which a coworker was working.  Id. at 554.  After unsuccessfully seeking coverage under separate insurance policies issued to the vehicle owner and coworker, the plaintiff sought coverage under the uninsured motorist provisions of his own policy.  Id. Agreeing that the car was uninsured as to the plaintiff, the court distinguished Reid in a footnote stating that "[t]he present case is distinguishable because it involves separate policies."  Id. at 555 n.5.  Boynton is inapplicable here because there was no contention in that case that the car that injured the plaintiff was also insured under the liability provisions of the policy under which uninsured motorist benefits were sought. Additionally, unlike the Smith policy, it does not appear that the plaintiff's policy in Boynton contained a provision excluding a vehicle insured under its liability provisions from the definition of uninsured motor vehicle.  See Gares, 365 F.3d at 994 ("The lower court decision [in Boynton], however, indicates that there was no such clause.").

- 15 -

dissent states is absent here—that extending uninsured motorist coverage "would effectively nullify" the household exclusion of the Nationwide policy's liability coverage provisions. The concern is that extending uninsured motorist benefits to a claimant under the same policy that contains a valid exclusion denying liability coverage to that claimant reads that exclusion out of the policy; the claimant can receive the benefits the liability policy denies by making the same claim on the same policy's uninsured motorist provisions. See Reid, 352 So. 2d at 1174 (stating that this outcome "would completely nullify the family-household exclusion").

Olah, however, said nothing about this concern and instead relied on the principle that "an insured vehicle under the liability portion of the policy . . . cannot be uninsured under the same policy." 662 So. 2d at 981. Moreover, contrary to the dissent's contention, this case actually presents the same concern about nullifying the household exclusion. Like the liability provisions of the Nationwide policy in Olah, the Smith policy contains a household exclusion applicable to claims for bodily injury to "any insured or any member of an insured's family residing in the insured's household." Smith was an insured under the liability provisions of the policy and thus, like the claimant in Olah, is precluded from receiving benefits under them. Granting uninsured motorist benefits to Smith would negate the Smith policy's liability exclusion just as granting such benefits to the claimant in Olah would have negated the same liability exclusion in the Nationwide policy.

The dissent next asserts that Olah can be distinguished because the claimant in Olah received some benefits under the vehicle owner's liability policy— although they were insufficient to satisfy her damages—while Smith received no liability

- 16 -

benefits under the Motzenbecker policy. The dissent does not, however, identify any legal principle, statute, or reported decision that makes this purported distinction relevant to the resolution of this case. The question of whether or to what extent benefits have been made available under some policy other than the one at issue is, on its face, unrelated to the question of whether a vehicle can be both uninsured and insured under the single policy at issue. See, e.g., Smith, 591 So. 2d at 927 (applying principle where insured's liability policy excluded her from coverage and driver was uninsured); Reid, 352 So. 2d at 1172-73 (applying principle with no indication that claimant received benefits under another policy). That a vehicle cannot be both insured and uninsured under the same policy, as the cases hold, is logically true regardless of whether some other policy responds in whole or in part to a claim.

The dissent finally asserts that Olah is distinguishable because, unlike Olah, this case involves "two completely separate and distinct theories of negligence," the negligent operation theory asserted by Ackermecht against Smith and the negligent maintenance theory asserted by Smith against Ackermecht and the Motzenbeckers. Again, the dissent demonstrates only that this is a difference between the two cases, not that the difference has any analytical consequence. If it is the law that a vehicle cannot be insured and uninsured under the same policy, and if it is the fact that the vehicle is insured under that policy (as it is here), then the theory under which the claimant proceeds is not material; under the law, the vehicle is not uninsured.[5]

---

[5]Because the dissent does not dispute our construction of the Smith policy's terms—namely that the Motzenbecker's car, when used by Smith, was insured under the liability provisions of that policy—it appears to agree with our earlier conclusion that that the car was insured for purposes of the statute.

2.

Although the Motzenbeckers' car was not uninsured as to the Smith policy, we would nonetheless treat it as such if one of the enumerated provisions of section 627.727(3) applies. Smith's response to State Farm's summary judgment motion in the trial court stated that the case is governed by subsection (3)(c), which applies where the "liability insurer . . . [e]xcludes liability coverage to a nonfamily member whose operation of an insured vehicle results in injuries to the named insured or to a relative of a named insured who is a member of the named insured's household." We do not agree that subsection (3)(c) applies in this case.

Section 627.727(3)(c) was adopted by the legislature to address the result in Brixius, in which a vehicle owner was injured in her own car due to the negligence of the uninsured friend. See Travelers Ins. Co. v. Warren, 678 So. 2d 324, 327 (Fla. 1996) (plurality opinion). The language the legislature chose is tailored to those facts; it treats an insured vehicle as uninsured for purposes of "injuries to the named insured or . . . relative" on account of a non-family member's "operation of an insured vehicle" under the liability policy. § 627.727; see also Bulone v. United Servs. Auto. Ass'n, 660 So. 2d 399, 404 n.7 (Fla. 2d DCA 1995) (stating that section 627.727(3)(c) "provides uninsured motorist coverage when a non-family permissive user is not a covered driver for liability insurance purposes"). Section (3)(c) thus applies to the factual circumstances, present in Brixius, in which the liability insurer[6] excludes coverage when a nonfamily permissive driver causes injury to a named insured or relative by virtue of his or her operation of the

---

[6]The supreme court has interpreted the term "liability insurer" in section 627.727(3) to mean "an insurer other than the insurer providing UM coverage to the claimant." Travelers Ins. Co., 154 So. 3d at 1112 (quoting Warren, 678 So. 2d at 327).

- 18 -

named insured's vehicle. See Harrington, 154 So. 3d at 1112; Warren, 678 So. 2d at 328 (explaining that the statute applies where "a nonfamily permissive user is driving an insured vehicle and causes injury to a *class I insured passenger* [,i.e., a named insured or resident relative]"). It thus guarantees that a named insured, or a relative of a named insured, who is a passenger in the insured's own car receives uninsured motorist coverage when a non-family member gets in an accident while operating the vehicle. This provision does not apply to the circumstances present here in which the familial driver seeks to recover from the uninsured motorist provision of his own policy for his own injuries as a driver on account of a separately insured vehicle owner's allegedly negligent maintenance of the vehicle.

The dissent does not deny that section 627.727(3)(c) is, by its terms, inapplicable to the facts of this case. It argues that we should apply to it those facts nonetheless because denying uninsured motorist coverage to a so-called "class I insured"—a named insured or resident relative of a named insured—like Smith is both "inequitable" and contrary to the "purpose" of that statute. The dissent posits that the legislature adopted section 627.727(3)(c) because it was persuaded by Justice Kogan's dissent in Brixius, which argued that "the test for determining whether a vehicle is insured for purposes of uninsured motorist coverage, is not whether the owner or operator of the vehicle has a liability insurance policy, but whether insurance is available to the injured plaintiff." 589 So. 2d at 239 (quoting Jernigan v. Progressive Am. Ins. Co., 501 So. 2d 748, 750 (Fla. 5th DCA 1987), disapproved of by Brixius, 589 So. 2d at 238)).

- 19 -

The problem is that any arguable purpose to codify Justice Kogan's Brixius dissent or to categorically mandate uninsured motorist coverage in all circumstances involving a class I insured is not the purpose actually conveyed by the text the legislature voted to adopt. The legislature did not write a statute implementing Justice Kogan's view that uninsured motorist benefits should be available whenever liability benefits do not fully compensate a claimant.[7] Nor did it write a statute invalidating the principle announced in Reid and relied upon in Brixius that a vehicle may not be both insured and uninsured under the same policy, a principle that necessarily means that there are some circumstances in which class I insureds will not be entitled to receive uninsured motorist coverage. It instead wrote a statute that is tailored to the facts of Brixius—i.e., that addresses the situation in which a named insured is injured as the result of a non-family member's operation of the named insured's vehicle—and those are not the facts of this case. The dissent's view may make a better statute, but writing a better statute is not our role. Absent a statutory ambiguity, which the dissent concedes is absent, our role is to apply the statute the legislature drafted without "engaging in speculation as to what . . . the legislators intended or should have intended."[8] Tropical Coach Line, Inc. v. Carter, 121 So. 2d 779, 782 (Fla. 1960); see also McDade v. State, 154 So. 3d 292, 297 (Fla. 2014).

---

[7]For this reason, the dissent's reliance on Workman v. State, 421 So. 2d 660 (Fla. 3d DCA 1982), a two-paragraph decision of the Third District decided long before Brixius, Olah, and the legislature's addition of section 627.727(3)(c), is unpersuasive. Workman rested on the same reasoning as Justice Kogan's dissent in Brixius, see id. at 660, and that reasoning is not what the legislature followed.

[8]The dissent relies on a Senate staff analysis to support its departure from the text of the statute. Because staff analyses are not written by legislators, may not be read by legislators, and are not voted on by legislators, there is a question as to whether use of such a source is appropriate even with respect to an ambiguous statute. See

III.

The Smith policy's definition of "uninsured motor vehicle" unambiguously excludes motor vehicles insured under its liability provisions from its scope. Because the Motzenbeckers' vehicle when driven by Smith was insured under the liability provisions of the policy, the trial court erred by holding that "the claimed exclusion does not apply . . . under the facts of this case." Neither this policy's definition nor the mere fact that this policy's liability coverage was insufficient as applied to specific injuries impermissibly limits the coverage the uninsured motorist statute otherwise requires. For these reasons, the final judgment of the trial court is reversed insofar as it determines that Smith was covered under the uninsured motorist provision of the Smith policy and the matter is remanded for proceedings consistent with this opinion. This disposition makes it unnecessary for us to reach State Farm's second point on appeal—that the trial court erred in allowing certain deposition testimony to be read at trial—and we therefore decline to do so.

Reversed and remanded.

Kasischke v. State, 991 So. 2d 803, 810 (Fla. 2008) (explaining that the supreme court "is not unified in its view of the use of legislative staff analyses to determine legislative intent" and questioning whether "staff analyses can ever assist in determining legislative intent" (quoting GTC, Inc. v. Edgar, 967 So. 2d 781, 789 n.4 (Fla. 2007))). At all events, the staff analysis the dissent uses does not support the conclusion it reaches. The staff analysis explains that the statute requires "an insurer . . . to provide UM coverage to a UM insured who is injured as a passenger in their own car driven by a nonfamily member." Fla. S. Comm. on Com., SB 170H (1992) Staff Analysis 9 (June 2, 1992). That connotes a statute tailored to the facts of Brixius and not one drafted to adopt Justice Kogan's broader view that a vehicle is deemed uninsured any time other insurance does not completely compensate a claimant for his or her injuries.

LUCAS, J., Concurs.
KHOUZAM, J., Dissents with opinion.

KHOUZAM, Judge, Dissenting.

I would affirm. This is a case of first impression in Florida,[9] and I believe that under the unique facts of this case the trial court correctly determined that Smith was entitled to coverage under the UM portion of his policy. The majority holds that Smith should be denied coverage because the policy unambiguously states that an "uninsured motor vehicle" cannot be one that has been insured for liability under that policy. But applying this exclusion to the facts of this case results in the denial of UM benefits for which Smith paid premiums simply because he has also paid for liability coverage for Ackermecht—a non-family member and third party beneficiary of Smith's policy who was found by a jury to be ninety-two percent at fault for the collision due to negligent maintenance of the vehicle. This result is inequitable

_____

[9]Though there are several cases that address exclusions like the one at issue here, the parties have not cited and I have not been able to locate a single Florida case applying such an exclusion where a permissive driver who was injured in an accident sought UM benefits under his own policy after being unable to recover either under the liability portion of his own policy or under the policy of his nonfamily passenger, whose family owned the vehicle. This case is also unique in that the driver is not the only party allegedly at fault in the accident—the passenger was found by a jury to be ninety-two percent at fault based on a negligent maintenance theory.

and flies in the face of the purpose of UM insurance as set forth in section 627.727, Florida Statutes (2006).

The overarching purpose of section 627.727 is to ensure coverage for certain class I insureds[10] who are injured or killed due to the negligence of uninsured or underinsured drivers who are unable to make the injured party whole. Brown v. Progressive Mut. Ins. Co., 249 So. 2d 429, 430 (Fla. 1971). "The statute is designed for the protection of injured persons, not for the benefit of insurance companies or motorists who cause damage to others." Id. The legislature announced this purpose in subsection 627.727(1), which mandates that insurers must provide UM coverage to any insured who does not expressly reject it and explains this requirement as follows:

> No motor vehicle liability insurance policy which provides bodily injury liability coverage shall be delivered or issued . . . unless uninsured motor vehicle coverage is provided therein or supplemental thereto for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles because of bodily injury, sickness, or disease, including death, resulting therefrom.

§ 627.727(1) (emphasis added).

---

[10]The difference between class I and class II insureds is that

class I insureds are named insureds and resident relatives of named insureds. Conversely, class II insureds are lawful occupants of the insured vehicle who are not named insureds or resident relatives of named insureds. Class II insureds do not pay for UM coverage under the named insureds' policy. Rather, class II insureds are essentially third party beneficiaries to the named insureds' policy.

Travelers Ins. Co. v. Warren, 678 So. 2d 324, 326 n.2 (Fla. 1996).

As the majority acknowledges, precisely because "the uninsured motorist statute 'was enacted to provide relief to innocent persons who are injured through the negligence of an uninsured motorist[,] it is not to be "whittled away" by exclusions and exceptions.' " Young v. Progressive Se. Ins. Co., 753 So. 2d 80, 83 (Fla. 2000) (quoting Mullis v. State Farm Mut. Auto. Ins. Co., 252 So. 2d 229, 238 (Fla.1971)). To that end, "a provision in a policy providing exceptions and/or exclusions not authorized by the statute [is] not enforceable." Lee v. State Farm Mut. Auto. Ins. Co., 339 So. 2d 670, 672 (Fla. 2d DCA 1976). Indeed, "[t]his and other Florida courts have consistently held that restrictions on uninsured motorist coverage are against public policy and void." Id.

It is true that section 627.727 does not squarely address the unique facts of this case. But subsection 627.727(3)(c) does address an analogous factual scenario:

> (3) For the purpose of this [uninsured motorist] coverage, the term "uninsured motor vehicle" shall, subject to the terms and conditions of such coverage, be deemed to include an insured motor vehicle when the liability insurer thereof:
>
> . . . .
>
> (c) Excludes liability coverage to a nonfamily member whose operation of an insured vehicle results in injuries to the named insured or to a relative of the named insured who is a member of the named insured's household.

This subsection was enacted to avoid the inequity created by the Florida Supreme Court's decision in Brixius v. Allstate Insurance Co., 589 So. 2d 236 (1991). See Travelers Ins. Co. v. Warren, 678 So. 2d 324, 328 (Fla. 1996).

In Brixius, Jill Brixius was injured in a single-car accident. At the time of the accident, Brixius was riding as a passenger and her uninsured friend was driving. Brixius owned the vehicle and it was insured by Allstate. Liability benefits were not

available to Brixius under the liability portion of her policy due to the family-household exclusion, so Brixius sought benefits under the UM portion of her policy. Allstate denied her claim based on a provision that was virtually identical to the one at issue in the instant case. It provided that "an uninsured auto is not a vehicle defined as an insured auto under the liability portion of this policy." Brixius, 589 So. 2d at 237.

In a four-to-three decision, the Florida Supreme Court approved the denial of coverage. There were two dissenting opinions. Both posited that the court should have approved Jernigan v. Progressive American Insurance Co., 501 So. 2d 748, 750 (Fla. 5th DCA 1987), in which the Fifth District held that "the test for determining whether a vehicle is insured for purposes of uninsured motorist coverage, is not whether the owner or operator of the vehicle has a liability insurance policy, but whether insurance is available to the injured plaintiff." Justice Kogan also opined in his dissent that the exclusion found in Brixius's policy was "so directly contrary to the policies of no-fault and the uninsured motorist statute as to be void on its face." Brixius, 589 So. 2d 238 (Kogan, J., dissenting). As Justice Kogan explained;

> Uninsured motorist coverage is an integral part of this state's system of no-fault automobile insurance. It is "mop up" insurance that covers losses occasioned by the fact that other motorists failed to obtain insurance covering their own negligence. . . .
>
> The central policy [of UM insurance], in other words, is at the very heart of the no-fault concept. Injured parties are discouraged from clogging the courts with minor traffic-injury cases; and they simultaneously are given a swift, sure method of covering their own losses. No-fault itself is undermined precisely to the extent that these policies are undercut. I can only conclude that the majority opinion unnecessarily undercuts these policies and, hence, the foundations of no-fault insurance itself.

Id.

Apparently finding the dissenting opinions persuasive, the legislature amended the UM statute in 1992 to include section 627.727(3)(c).  See Ch. 92-318, § 79, at 3148-49, Laws of Fla.  The staff analysis stated that the amendment was meant to address the issue in Brixius, effectively superseding the majority opinion and allowing for UM coverage in future scenarios like Brixius's:

> Coverage was denied since liability benefits were not available to Brixius because under the policy, liability coverage did not apply for bodily injury to the name[d] insured or any household relative of the name[d] insured. This is a "family exclusion clause" that is intended to prevent a collusive [lawsuit] among family members.  In this case the UM coverage was denied because the policy issued to Brixius further stated that an ["uninsured auto"] was not a vehicle defined as an insured auto under the liability portion of the policy.
>
> The bill redefines "uninsured motor vehicle" to include an insured motor vehicle when the liability insurer has denied liability coverage to a nonfamily member whose operation of an insured vehicle results in injuries to the named insured or relatives.  Therefore, an insurer would be required to provide UM coverage to a UM insured who is injured as a passenger in their own car driven by a nonfamily member.

Fla. S. Comm. on Com., SB 170H (1992) Staff Analysis 8-9 (June 2, 1992).

Even though section (3)(c) does not address the specific factual scenario presented in the instant case, the Brixius opinion viewed in light of the subsequent statutory amendment does suggest that the exclusion in Smith's policy is an inappropriate limitation on UM coverage.  The underlying purpose of the amendment was "to avoid the inequity of denying benefits to a class I insured who had paid for the liability coverage to protect permissive users and had also paid for UM coverage."  Warren, 678 So. 2d at 328.  The

exclusion at issue in Brixius was essentially identical to the one at issue here, and applying it to the facts of this case will likewise result in the complete denial of coverage to a class I insured who cannot recover either under the liability portion of his own policy or from the un/underinsured nonfamily tortfeasor. Here, the underinsured nonfamily passenger/owner negligently maintained the vehicle and the driver seeks UM benefits under his own policy. In Brixius, the nonfamily uninsured permissive driver was the tortfeasor and the passenger/owner sought UM coverage under her own policy. I see no meaningful difference between applying the exclusion to the facts of Brixius and the facts presented in this case. In both cases, the class I insureds should not be denied UM benefits for which they have paid premiums; such a result is inequitable and undermines the policy behind UM insurance. Indeed, without the exclusion, the Nissan clearly qualified as an uninsured motor vehicle because Smith had been denied coverage under the Motzenbecker policy:

> UNINSURED MOTOR VEHICLE—COVERAGES U and U3
>
> We will pay damages for bodily injury an insured is legally entitled to collect from the owner or driver of an uninsured motor vehicle. The bodily injury must be sustained by an insured and must be caused by accident arising out of the operation, maintenance or use of an uninsured motor vehicle.
> . . . .
>
> Uninsured Motor Vehicle—means:
> 1. a land motor vehicle, the ownership, maintenance, or use of which is:
> . . . .
>
> b. insured, self-insured or bonded for bodily injury liability at the time of the accident; but
> . . . .
>
> (3) the insuring company or self-insurer denies coverage[.]

(Last two emphases added.)  Accordingly, under the unique circumstances of this case, the trial court was correct in finding that Smith was entitled to UM coverage.

In arriving at the contrary conclusion, the majority relies on the Florida Supreme Court's decisions in Travelers Commercial Insurance Co. v. Harrington, 154 So. 3d 1106 (Fla. 2014); Travelers Insurance Co. v. Warren, 678 So. 2d 324 (Fla. 1996); and Reid v. State Farm Fire & Causality Co., 352 So. 2d 1172 (Fla. 1977); as well as this court's decision in Nationwide Mutual Fire Ins. Co. v. Olah, 662 So. 2d 980 (Fla. 2d DCA 1995).  While at first blush these cases appear to support the denial of coverage in this case, they are factually distinguishable.

In Harrington, Crystal Harrington was injured in a single-car accident.  At the time of the crash, Joey Williams—a non-family member—was driving and Harrington was a passenger.  The car was owned by Harrington's father and insured by Travelers.  Williams had a policy with Nationwide.  Harrington recovered the liability limit of $50,000 under the Nationwide policy as well as the liability limit of $100,000 under the Travelers policy.  Williams was also covered under the liability portion of the Travelers policy.  Because Harrington's damages exceeded the payments she received under the two policies, she sought UM coverage from Travelers.  Travelers denied coverage under a "family vehicle exclusion," which stated that an uninsured vehicle did not include any vehicle:

> Owned by or furnished or available for the regular use of you
> or a "family member" unless it is a "your covered auto" to
> which Coverage A of the policy applies and bodily injury
> liability coverage is excluded for any person other than you
> or any "family member" for damages sustained in the
> accident by you or any "family member[.]"

- 28 -

Harrington, 154 So. 3d at 1108-09 (alteration in original).  The supreme court determined that this exclusion did not conflict with subsection (3)(c) because the liability portion of the policy did not exclude non-family members and because subsection (3)(c) does not "stack UM coverage on top of liability coverage under a single policy."  Id. at 1113 (quoting Warren, 678 So. 2d at 328).

In Warren, Dianna Lynn Warren and her friend Celeste Chancey Bryant were killed in a single-car accident.  At the time of the accident, Bryant was driving and Warren was a passenger.  The car was owned by Bryant's father and insured by Travelers.  Warren's estate alleged that her wrongful death was caused by Bryant's negligent operation of the vehicle and/or negligent maintenance of the car, ultimately settling for the liability limit of $50,000.  The estate then claimed entitlement to UM coverage under the same policy.  Travelers denied coverage based on a provision providing that "your car" (the car insured under the policy) was not an uninsured vehicle.  The supreme court determined that this exclusion did not conflict with section 627.272, specifically explaining that "section 627.727(3)(c) did not stack UM coverage on top of liability coverage under a single policy."  Warren, 678 So. 2d at 328.  The supreme court emphasized that to do so would effectively raise the limit of liability coverage for class II insureds, a result that the court did not believe the legislature intended.  Id.

The holdings in Harrington and Warren do not apply here for several reasons.  In both of these cases, the exclusions at issue were different and significantly narrower than the exclusion at issue here, which purports to exclude any vehicle insured under the liability portion of the policy.  See Harrington, 154 So. 3d at 1108 (addressing a "family vehicle exclusion"); Warren, 678 So. 2d at 326 (addressing

- 29 -

provision providing that "your car," the car insured under the policy, was not an uninsured vehicle).  But perhaps more importantly, both Harrington and Warren sought to stack UM coverage in addition to bodily injury coverage under the same policy for the same loss.  Stacking is inappropriate because it would effectively raise a policy's liability limits.  Warren, 678 So. 2d at 328.  Here, however, Smith has not recovered any benefits for his own injuries, so it is clear that he is not seeking to stack UM coverage on top of bodily injury coverage under the same policy for the same loss.  I would also note that Warren was a class II insured, whereas Smith is a class I insured.  It is particularly problematic for UM coverage to be completely denied to a class I insured because he or she has paid for that coverage.  And finally, the concern that the limits of liability coverage would be effectively and inappropriately raised is not implicated here because Smith has not recovered under the liability portion of his policy.

In Reid, Dawn Marie Reid was injured in a car accident while a passenger in her father's car.  Her sister was driving.  The vehicle was insured by State Farm.  Reid sought coverage under the liability and UM portions of the State Farm policy.  She was denied liability coverage based on a family-household exclusion because the alleged tortfeasor was her sister and they resided in the same household.  She was denied UM coverage based on an exclusion providing that an uninsured vehicle could not be the vehicle defined in the policy as the insured vehicle because the vehicle at issue was the family car listed as insured under the policy.  It was in this narrow context that the supreme court determined that an insured vehicle "does not become uninsured because liability coverage may not be available to a particular individual."  Reid, 352 So. 2d at 1173.

- 30 -

Reid is distinguishable from the instant case because Smith was not driving the vehicle explicitly listed as insured under his policy. Indeed, the court made clear that the facts of the case made it an exception to the general rule "that an insurer may not limit the applicability of uninsured motorist protection." Id. Additionally, an important factor in the supreme court's decision in Reid was that Reid's sister, a family member who lived in the same household, was driving at the time of the accident. The supreme court stated that to allow recovery under the UM portion of the policy under these circumstances "would completely nullify the family-household exclusion," a valid type of exclusion intended to prevent collusive lawsuits between family members. Id. at 1173-74.

In Olah, Daniel Lattanzio was driving a vehicle owned by Theodore and Margaret Simon, and the Simons and Aileen Lattanzio were passengers. Due to Mr. Lattanzio's negligent operation of the vehicle, it struck a vehicle occupied by Mr. and Mrs. Born, and all of the occupants of both vehicles were killed. The vehicle that Mr. Lattanzio had been driving was covered under the Simons' policy with Allstate. Lattanzio also had a policy on his own vehicles with Nationwide. Olah, 662 So. 2d at 981.

After the decedents' estates made various claims against these two policies, Allstate paid its liability limits of $100,000 to Lynn Olah, on behalf of the Estate of Ms. Lattanzio, and Nationwide tendered its liability limits of $300,000 to the Simon and Born estates. The estate then sought payment under the liability as well as UM portions of the Nationwide policy. The estate's claim under the liability portion of the Nationwide policy was rejected because Ms. Lattanzio was a member of Mr. Lattanzio's

household.  The issue in <u>Olah</u> was whether the estate could recover under the UM portion of the Nationwide policy.  <u>Id.</u>

This court held that the estate was not entitled to UM coverage under the Nationwide policy because it provided that an uninsured vehicle does not include "any motor vehicle insured under the liability coverage of this policy," and the Simon vehicle was covered under the liability portion of the Nationwide policy because Lattanzio had been driving it.  <u>Id.</u> at 982.  The court explained that the exclusion was "clear and unambiguous."  <u>Id.</u>  The <u>Olah</u> court noted the <u>Brixius</u> opinion and the later amendment to section 627.727(3), concluding that the amendment was not applicable because "it affects claims invoking nonfamily tortfeasors."  <u>See</u> <u>Olah</u>, 662 So. 2d at 982 n.3.

<u>Olah</u> is distinguishable from the instant case because Ms. Lattanzio was killed in an accident caused by her family member's negligent driving.  Like in <u>Reid</u>, to allow Ms. Lattanzio to recover UM benefits under this circumstance would effectively nullify the family-household exclusion.  In this case, the family-household exclusion found in Smith's policy is not implicated because Smith and Ackermecht are not family members or members of the same household—a scenario much like that presented in <u>Brixius</u>.  Another significant difference between <u>Olah</u> and the instant case is that the estate recovered $100,000 under the Allstate policy whereas Smith has not recovered anything under either his policy or the Motzenbecker policy.  This complete denial of coverage makes the facts of this case more akin to those in <u>Brixius</u> as opposed to those in <u>Olah</u>.

A final point that distinguishes the instant case from <u>Harrington</u>, <u>Warren</u>, <u>Reid</u>, and <u>Olah</u> is that those cases each involved a single negligent party.  Here, on the

other hand, Ackermecht recovered from the Smith policy claiming that Smith had negligently operated the vehicle, but Smith sought to recover under the Motzenbecker policy as well as the UM portion of his policy claiming that Ackermecht had negligently maintained the vehicle.  He was unable to recover anything under this theory.  The fact that Ackermecht and Smith sought recovery under two completely separate and distinct theories of negligence is an additional reason that allowing Smith to recover UM benefits under the facts of this case would not constitute improper stacking.

In my view, the facts presented in <u>State Farm Mutual Automobile Insurance Co. v. Workman</u>, 421 So. 2d 660 (Fla. 3d DCA 1982), are more like those of the instant case than any of the other cases addressed thus far.[11]  In <u>Workman</u>, Naomi Workman was killed while driving a car owned by Kenneth Willis, a non-family member who was riding as a passenger at the time of the accident.  Workman's estate recovered liability coverage under Willis's insurance policy with Allstate, but the limits of that policy were less than Workman's own UM coverage with State Farm.  Workman's estate sought UM coverage under the State Farm policy, claiming that Willis was negligent. State Farm denied coverage based on a policy provision essentially identical to the one at issue in this case which excluded UM coverage for vehicles insured under the liability portion of the policy.  Despite the fact that Workman had been afforded liability coverage for her liability while operating a nonowned vehicle, the Third District determined that UM benefits must be available to Workman's estate.  The court reasoned "that the focus of our inquiry should be whether the injury for which a claim is

---

[11]Interestingly, the <u>Harrington</u>, <u>Warren</u>, and <u>Olah</u> decisions failed to mention <u>Workman</u>.

made is covered by liability insurance, rather than a general inquiry into whether some kind of insurance covered, for some purposes, the automobile involved in the accident." Id. at 660. The court noted that Reid was "distinguishable in that it involved a family-household exclusion, not applicable here." Workman, 421 So. 2d at 661 n.1.

I agree with the Workman court's analysis, and I believe that it should be applied to the instant case. Both cases involve a permissive driver's claim for UM coverage under his or her own insurance policy where a non-family member passenger's negligence allegedly contributed to an accident. Despite a provision in Workman's policy excluding UM coverage for a vehicle insured under the liability portion of the policy, the Workman court held that UM coverage was appropriate. I would hold that coverage is similarly appropriate in this case. Indeed, Workman had already recovered under Willis's policy whereas Smith could not recover under the Motzenbecker policy at all—so the equities weigh even more heavily in favor of coverage under the facts presented here.

Accordingly, I conclude that applying the exclusion in Smith's policy under the facts of this case is contrary to the purpose of UM insurance and Smith should be entitled to UM coverage. I respectfully request that the legislature clarify section 627.727 to address factual scenarios like this one so that this inequity will not be repeated.